DELANEY et al.  v.  OSBORN.

No. 35439.

Supreme Court of Oklahoma.

Dec. 1, 1953.

Rehearing Denied Jan. 19, 1954.

482

Connor, Winters, Randolph & Ballaine, Tulsa, Ames, Daugherty, Bynum & Black, Oklahoma City, Busby, Harrell & Trice, Ada, for plaintiffs in error.

Anglin, Stevenson & Huser, Holdenville, Robinson, Shipp, Robertson & Barnes, Oklahoma City, for defendant in error.

Floyd Green, Oklahoma City, Conservation Attorney, Corporation Commission.

O'NEAL, Justice.

The present application was filed September 10th, 1951, before the Corporation Commission of the State of Oklahoma by W. B. Osborn, for an order changing the allowable formula applicable to the Gibson Sand reservoir in the Katie Field, Garvin County, Oklahoma, to the formula applicable to the production from the Gibson Sand throughout the Golden Trend Gibson area, or to some limiting gas-oil ratio.

W. A. Delaney, Jr., Zephyr Petroleum Company and Fordee-Rhoades Oil Company appeared in said cause and protested the granting of the order.

W. B. Osborn will be hereafter referred to as "Applicant", and W. A. Delaney, Jr. and associates as "Respondents". The Corporation Commission will be referred to as "Commission".

The pivotal question for our decision is whether the order of the Corporation Commission is sustained by substantial evidence. If so, the order must be affirmed unless the contentions made by respondents, to which we shall subsequently advert, defeat the validity of the order.

Applicant contended before the Commission that the Katie Field in Garvin County, Oklahoma, lies approximately contiguous to an area which the Commission has heretofore classified as the Golden Trend area; that this area produces both oil and gas from a common source of supply designated as the "Gibson Sand". That upon a prior application of producers in the Katie Field the gas-oil ratio was raised to 5000 to 1; whereas, in other portions of the producing area in the Golden Trend, the ratio was established at 2000 to 1 from the common source of supply.

The Commission was therefore confronted with the problem of whether such production caused waste by a more rapid reservoir voidage under the area of the high ratio well located on the East side of the Kelly Field, and likewise whether the reduced gas-oil ratio would prevent such waste.

Respondents conceding the authority of the Commission to prevent waste assert that the original order of the Commission establishing a gas-oil ratio of 5000 to 1, should not be limited unless the evidence establishes a change of condition in the field. Affirmatively, they assert that no change of condition has been established by any evidence in the record. Furthermore, that the order of the Commission limiting the gas-oil ratio deprives the respondents of their correlative right to a just and equal participation in the production. These respective contentions require an examination of the record with reference to the probative value of the evidence adduced to support them.

As shown by applicant's petition it is primarily based upon his contention that the adoption of a lower gas-oil ratio will preserve reservoir energy, effect a greater ultimate recovery of oil and gas from a common source of supply and that such order will protect the correlative rights of the owners thereof.

Applicant produced two witnesses, qualifying as geologists, who testified that since the original order of the Commission which established the 5000 to 1 gas-oil ratio, that the Katie Field has been extended by additional development and production now connecting it with the Golden Trend area, thus forming a common source of supply. In support of the limited gas-oil ratio, these witnesses expressed opinions that by keeping the gas in formation and using it to help lift the oil, will substantially increase the ultimate recovery of oil from the field; that the high gas-oil ratio wells as presently pro-

duced under the 5000 to 1 ratio are voiding more reservoir space than wells that are limited by their production and by their oil allowables resulting in more oil being left in the formation which will never be recovered.

The Chairman of the Commission interrogating one of applicant's witnesses propounded the following question: "Will you give your opinion, as a geologist and a petroleum engineer, as to whether or not conditions have changed in this Field since the original order and the attempt to make this order"? The witness answered: "I did. I think I made a very broad statement awhile ago, that conditions have changed decidedly; that there are several thousand acres, additional acres, that have been proven—have been drilled since that decision was made, and we have many factors that are added now, and are known now, that were not known then".

Respondents produced evidence tending to establish that there was no material difference in geology or actions of the wells; that there were high gas-oil ratio wells then as there were at present; that the field was slowly, and orderly, developed to the west and south, and that there was no change in the condition recited in the Commissioner's previous findings, except that the wells are now older and they make less gas and make less oil; that as to the expansion of the gas cap and the evidence of channeling as found by the Commission in 1950, the conditions have not changed; that there was indication of channeling and underground drainage in 1950, and that the gas cap was expanding westward, and that the reservoir was a gas expansion—gravitation type, and that there were variations in the sand formation then and now.

The Commissioner's findings made on January 4, 1952, read, in part, as follows:

"That under date of January 6th, 1950, this Commission issued its Order No. 23273, in Cause CD No. 2398, fixing the limiting gas-oil ratio of 5,000 cubic feet of gas for each barrel of oil produced in the Katie Pool from the Hoxbar Sand First Series, which sand series is now what is known as the Gibson Sand common source of supply,

and that the field has been operated with the gas-oil ratio limitation since that date.

"That since said time, the Commissioner has issued its Order No. 24997 in Cause CD No. 3289, fixing a limiting gas-oil ratio of 2,000 cubic feet of gas for each barrel of oil produced throughout the Golden Trend Area, which order covers fields and pools located in the same general area as the Katie Pool.

"That production of oil and gas from the field under order No. 23273 has brought about a change of conditions in that it is now known, according to the evidence, that underground waste is being caused by the migration of oil from one side of the field having a low gas-oil ratio to the other side of the field which has a high gas-oil ratio, and that under said Order No. 23273, correlative rights are not being protected in that the high gas-oil ratio wells are securing an unfair advantage in the production of oil and gas from the common source of supply.

"That by taking out large amounts of gas from the high side of the pool a low pressure area is brought about and oil and gas is migrating from the other side of the field to the side of the field that has a high gas-oil ratio, and that by such migration, oil is being moved up structure and will be left in the formation unless the gas-oil limitation is adjusted downward.

"That in the interest of protecting the correlative rights and the prevention of underground waste, Order No. 23273 should be amended or modified so as to provide for a limiting gas-oil ratio of 2,000 cubic feet of gas for each barrel of oil produced, and that hereafter, the production from the field should be figured on the new gas-oil ratio limitation in adjusting the per well allowables".

Upon such findings the Commission on said date entered its order which reads as follows:

"It Is Therefore Ordered by the Corporation Commission of Oklahoma,

that Orders Numbered 21434, 21845 and 23273 be, and the same are hereby amended to provide for a limiting gas-oil ratio of 2,000 cubic feet of gas for each barrel of oil produced and such limiting gas-oil ratio shall be applicable to the Gibson Sand common source of supply throughout the Katie Field located in Garvin County, Oklahoma.

"It Is Further Ordered that the Conservation Department of the Corporation Commission figure all allowables for wells in the Katie Pool on the limiting gas-oil ratio fixed herein."

Title 52 O.S.1951 § 86.2 defines the term "waste", as applied to the production of oil, in addition to its ordinary meaning, shall include economic waste, under-ground waste, including water encroachment in the oil or gas bearing strata; the use of reservoir energy for oil producing purposes by means of methods that unreasonably interfere with obtaining from the common source of supply the largest ultimate recovery of oil.

Title 52 O.S. 1951, § 86.3 of the Act defining waste of gas substantially provides that the term "waste", as applied to gas, in addition to its ordinary meaning, shall include the inefficient or wasteful utilization of gas in the operation of oil wells drilled to and producing from a common source of supply.

■ We find substantial evidence in the record to support the Commission's finding that the utilization of gas on a ratio of 5,000 to 1, in the Katie Field by reason of the extension and development of the Golden Trend area, is a wasteful utilization of gas in the operation of oil wells drilled to and producing from the common source of supply.

We also find substantial evidence to support the Commission's finding that the present production from the Katie Field and the production from its extensions known as the Golden Trend area produces from a common source of supply, and that the wells so producing from the high side, or East side of this supply are high gas-oil ratio wells and are inefficient oil producers in comparison with the other wells producing at a low gas-oil ratio, and that a limited gas-oil ratio will preserve and protect the correlative rights of the owners thereof.

■ In determining the sufficiency of the evidence to sustain the present findings of the Commission and its order, we cannot review and weigh the evidence to determine its preponderance. Our review is limited to the question of whether the findings and conclusions are sustained by substantial evidence and the law. Art. IX, Sec. 20, of the State Constitution of Oklahoma; Yellow Transit Co. v. State, 198 Okl. 229, 178 P.2d 83; Peppers Refining Co. v. Corporation Commission, 198 Okl. 451, 179 P.2d 899.

■ We find no merit in respondents' contention that the Commission was without authority to modify its previous order. This contention is based upon a fallacious conception that where the Commission has once acted, it is impotent to act again.

■ The statute, supra, which defines "waste" likewise imposes a duty upon the Commission to make rules, regulations and orders for the prevention of waste. The Commission in the exercise of its rule making authority is not limited to a situation in which conditions have changed, but it has the authority to establish all necessary rules and regulations to prevent waste as specified in the statute.

The order of the Commission is affirmed.