**LANDOWNERS, OIL, GAS AND ROYALTY OWNERS, by and through their attorney, Richard E. Romang, Plaintiffs in Error,**

**v.**

**CORPORATION COMMISSION of the State of Oklahoma, Champlin Oil & Refining Company, Livingston Oil Company, and Harper Oil Company, Defendants in Error.**

**No. 41132.**

Supreme Court of Oklahoma.

Nov. 9, 1966.

Richard E. Romang, Enid, for plaintiffs in error.

Nathan Scarritt, Enid, for defendant in error Champlin Petroleum Co.

Paul Brown, Oklahoma City, for defendant in error Livingston Oil Co.

Ferrill H. Rogers, Nell Rhodes Fisher, Oklahoma City, for defendant in error Corporation Commission.

T. Murray Robinson, Oklahoma City, for defendants in error Champlin Petroleum Co. and Harper Oil Co.

IRWIN, Justice:

This is an appeal by a majority of the landowners, gas, oil and royalty owners, hereinafter designated protestants, who own properties covered by drilling and spacing order No. 55417, entered by the Corporation Commission, hereinafter designated Commission.

Champlin Oil & Refining Company submitted its application to establish both gas and oil drilling and spacing units for the further development of the Mississippi Lime formation in the Northeast Enid Field, sometimes called the Enid Breckenridge Field, in Garfield County.

After the hearing, the Commission found, inter alia:

"That portions of the area hereinafter referred to have been developed for the production of oil and gas in the Mississippi Lime formation, and early in the history of such development this Commission fixed 80 acre drilling and spacing units for the production of oil and gas from the Mississippi reservoir in a substantial portion of the area covered by Champlin's Application; that although 80 acre drilling and spacing units were fixed by this Commission for a substantial portion of said area, by agreements in writing between the Operators and the Royalty owners under separate tracts, only one well has been drilled on most of the 160 acre tracts involved; that early in the life of the development of said reservoir some wells produced oil and gas with comparatively low gas-oil ratios; that as the Field developed and expanded more wells were drilled having substantially higher gas-oil ratios, and in the course of the production of many of the wells in said Field the gas-oil ratio has increased in substantial amounts; that because of the characteristics of said reservoir it now appears that in a large portion of the reservoir the substantial portion of the products that will be recovered will be attributable to gas, and it now appears to the Commission that said reservoir is primarily a gas reservoir, producing oil in association with gas in portions thereof."

Based on its findings, Commission established 80, 160 and 320 acre drilling and spacing units and adopted Field Rules for development. Protestants appealed from Commission's order establishing the drilling and spacing units. They assert no objection

to the 80 acre units but challenge the 160 and 320 acre drilling and spacing units established.

■ Protestants contend Commission's Order and Field Rules are in direct violation of 52 O.S.1961, Sec. 87.1(c), and cite the following portion thereof, to-wit:

"* * * The Commission shall not establish well spacing units of more than eighty (80) acres in size covering common sources of supply of oil the top of which lies less than 9,990 feet and more than 5,000 feet below the surface as determined by the original or discovery well in said common source of supply. * * *"

The productive area involved is within the depths above specified and protestants argue that the order, in effect, amends the statute to make it read 320 acres instead of 80 acres. The well-spacing units of not more than 80 acres in the cited statutory provision is directed at well-spacing units in "common sources of supply of oil". The spacing units established by the order in question is directed at that portion of the reservoir which Commission found was primarily a gas reservoir.

Protestants also argue that the order made no provisions for wells in the area which are predominantly oil wells; and that after the order was entered an oil well was completed under the definition contained in the Field Rules, but this well is located in a 320 acre spacing unit. If, after the order was entered, subsequent development discloses that a portion of said reservoir should be spaced on a different acreage plan, Commission has plenary power either on its own motion, or upon proper application to reconsider the force and effect of its order in view of the subsequent development (see Delaney v. Osborn, Okl., 265 P.2d 481) but these alleged facts transpired after this order was entered and do not present an issue in this proceeding.

Protestants contend that Commission's order violates both the Oklahoma and the Federal Constitution in that it takes private property without due process of law and without compensation and impairs obligations of contracts. They contend certain lessors had previously entered into agreements with the lessees that combined two 80 acre spaced units for production as a 160 acre unit and Commission had previously approved these agreements and a 180 per cent allowable for one well thereon. They argue that this order combines some of these 160 acre units into 320 units and the owner having a well drilled on his property must now give one-half of his royalty to the adjoining property owner in the new unit.

In Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83, and Wood Oil Co. v. Corporation Commission, Okl., 268 P.2d 878, we held that regulation by the state under its police powers of the drilling of oil and gas wells into a common source of supply and the distribution of the production among owners of mineral rights in land overlying the common source of supply does not violate provisions of either State or Federal Constitutions prohibiting taking of property without just compensation or without due process of law.

In Oklahoma Natural Gas Company v. Long, Okl., 406 P.2d 499, we stated the following:

"The right of the Legislature to act under the police power of the state is a part of the existing law at the time of the execution of every contract, and as such becomes in contemplation of law a part of that contract."

We also stated:

"Well spacing is a valid exercise of the police power of the State in the interests of conservation of our natural resources, and private contractual provisions requiring the drilling of a well to tap these resources must yield where in conflict with such spacing regulations."

■ If we follow protestants' argument that the Commission could not modify the private agreements or its previous order, it would result in a common source of supply being spaced by the lessor and lessee

rather than by Commission and if approved by Commission, Commission would be without authority to modify such agreement and order. As will be hereinafter shown, Commission has authority to establish, re-establish or re-form well spacing and drilling units.

Commission found that "The limitation under the field rules of the production of a well located in a 320 acre unit will serve to protect the correlative rights of the owners of such units, and the correlative rights of offsetting units, and all other units, and will permit such owners of the well therein, regardless of its location, to recover a fair share of the reservoir substances."

■■ The above finding is supported by substantial evidence and we can not sustain protestants' argument that the owner having a well drilled on his property has to give one-half of his royalty to the adjoining property owner in the unit.

■ Protestants argue that in most, if not all of the 320 acre units having a producing well, the wells are off pattern, not uniform in location nor equal in distance apart.

Anytime a reservoir is partially developed under one spacing plan and subsequent knowledge dictates the reservoir should be spaced on a different acreage plan, in all probability, the existing wells will not be located in exact accordance with the subsequent plan.

Title 52 O.S.1963, Sec. 87.1(a), provides in part that:

" * * * the units in the predominantly oil area or areas shall be of approximately uniform size and shape, and the units in the predominantly gas area or areas shall be of approximately uniform size and shape, except that the units in the gas area or areas may be of non-uniform size and shape when they adjoin the units in the oil area or areas; provided further that the drilling pattern for such nonuniform units need not be uniform, and provided further that the Commission shall adjust the allowable production within said common source of supply, or any part thereof, and take such other action as may be necessary to protect the rights of interested parties. * * *."

The Order under consideration clearly designates the drilling pattern for future development of any 320 acre units.

Protestants quote various excerpts from the testimony of some of the witnesses and argue that Commission's Order and Field Rules are not supported by substantial evidence. In this connection protestants argue that the burden of proof is on the proponents of the plan and they have failed to establish by substantial evidence that the area is predominantly gas.

As heretofore stated, Commission found that in the early development of this reservoir the production consisted of a comparative low gas-oil ratio and it appeared to be primarily productive of oil; that as the field developed and expanded, the wells reflected a substantially high gas-oil ratio; and that it now appears that a portion of said reservoir is primarily a gas reservoir, producing oil in association with gas in portions thereof.

■ In Mee v. Corporation Commission, Okl., 293 P.2d 593, we held that an order of the Corporation Commission will be affirmed by this Court if it is supported by substantial evidence, and cited with approval Woody v. State Corporation Commission, Okl., 265 P.2d 1102, wherein we said that in the orderly administration of law we must indulge the presumption that the Commission's order is just, reasonable and correct.

We have examined the record and can only conclude that the Commission's order is supported by substantial evidence. Having reached such conclusion, the order of the Commission is affirmed.

Affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY and HODGES, JJ., concur