**Marvin D. MANN, Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

**Nos. 52672, 53770.**

Supreme Court of Oklahoma.

April 16, 1985.

---

Carr & Carr by Patrick E. Carr, Tulsa, for appellee.

Palmer & Caslavka, Inc. by Thomas L. Palmer, Tulsa, for appellant.

LAVENDER, Justice:

Appellee, Marvin D. Mann, initiated this action against appellant State Farm Mutual Automobile Insurance Company seeking recovery of losses sustained as a result of the "theft" of an insured automobile. Appellant admitted the existence of a contract of insurance as to the automobile, but denied

coverage of the loss under the provisions of the contract.

The automobile in question had been advertised for sale by appellee. Appellee was subsequently contacted by an individual who expressed an interest in purchasing, but who offered a lower price than that requested by appellee. After some negotiations, appellee and the individual agreed on a purchase price. There then followed a discussion concerning the method of payment, and appellee was persuaded to accept the individual's personal check. Appellee then put the individual in possession of the automobile and delivered the keys and a "bill of sale" or "receipt" in return for the personal check.

The check which had been given to appellee was subsequently returned due to lack of funds in the account on which it was drawn. The individual later admitted, in a deposition, that he had known the account was insufficient when the check was drawn and that his sole intent at the time was to persuade appellee to part with possession of the automobile. The automobile was never recovered.

The basis for denial of liability was appellant's contention that the loss was not a "theft" as covered by the insurance policy and was further specifically excluded as a loss occurring while in possession of another under a conditional sale or purchase agreement.

Appellee's initial petition seeking recovery under the insurance policy was subsequently amended to seek additional damages from appellant for an alleged bad faith refusal to honor the terms of the insurance contract.[1]

▉ Both parties subsequently filed various motions for "partial summary judgment."[2] The trial court granted appellee's motion for "partial summary judgment" as to the issue of liability. The trial court ruled that the loss was a theft as covered by the policy, was not within the policy's exclusion provisions, and was thus subject to the policy's comprehensive coverage. On its own motion, the trial court went on to try the issue of damages covered under the contract and entered judgment for appellee for the amount of damages determined. The theory of bad faith refusal was reserved for a later jury trial.

Appellant filed a petition in error challenging the trial court's entry of judgment on the question of liability under the insurance contract. Subsequently, an original proceeding was commenced in this Court to prohibit further action by the trial court in this case until this appeal was disposed of. In ruling on the application for writ of prohibition, this Court found that the trial court's judgment was appealable as "an interlocutory summary adjudication [which] can be treated as final,"[3] and issued the writ to prevent further proceedings pending the disposition of the present appeal.

We turn now to the merits of the matter.

### I.

Appellant, in its brief on appeal, challenges the trial court's entry of judgment in the interlocutory summary adjudication on grounds of error of law in the interpretation of the contract and on grounds of the existence of controversy as to the interpretation of the material facts.[4] Appellant also challenges the trial court's separate handling of the issue of damages under the contract and the claim for bad faith refusal to honor the contract.

1. See *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla.1977).

2. The term, as used by the parties in this case, is misapplied in a situation where a ruling is sought as to one issue underlying a *theory* of recovery where separate *theories* of recovery are pleaded as arising from one occurrence giving rise to a single cause of action. The proper term to be applied to the ruling actually sought would be an interlocutory summary adjudication or determination. *Mann v. State Farm Mutual Automobile Ins. Co.*, 669 P.2d 768, 771 (Okla.1983).

3. *Mann v. State Farm Mutual Automobile Ins. Co.*, 669 P.2d 772.

4. See *Wilds v. Universal Resources Corp.*, 662 P.2d 303 (Okla.1983).

The first argument advanced by appellant concerns the interpretation of the general comprehensive coverage provision of the policy, which reads:

COVERAGE D—COMPREHENSIVE

(1) The Owned Motor Vehicle. To pay for loss to the owned motor vehicle EXCEPT LOSS CAUSED BY COLLISION but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable thereto. The deductible amount shall not apply to loss caused by a fire or by a theft of the entire vehicle. Breakage of glass, or loss caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion or colliding with birds or animals shall not be deemed to be loss caused by collision.

Appellant contends that the loss of appellee's automobile was not due to "theft" or "larceny" as these terms are used in this policy. The policy, however, does not provide definitions of these terms.

In support of this proposition, appellant relies on a line of cases from the District of Columbia Court of Appeals,[5] which hold that a voluntary surrender of possession of an automobile by the owner, even though induced by the fraud and misrepresentation of a wrongdoer, because not within the common law definition of "theft" or "larceny," is not covered under a policy such as we have here. Apparently using the same rationale is a former opinion of this Court, *Thompson v. Connecticut Fire Ins. Co.*[6]

Cases from other jurisdictions, which are cited by appellee in support of the trial court's ruling, have found coverage to exist under policies and circumstances similar to this case by treating the circumstances where an insured is induced to part with possession of his automobile by fraud as simply another species of theft.[7] It has been asserted that cases such as *Thompson* and those of the District of Columbia previously cited [8] failed to consider the ambiguity of the terms, "theft" and "larceny" introduced into the policy by the insurer. The more recent cases interpret the terms more liberally and in favor of coverage by assigning to the words a meaning which is commonly understood by persons in ordinary walks of life.[9]

Upon consideration of the matter we are persuaded by the reasoning of the Arizona Supreme Court on this point as set forth in the case of *Almadova v. State Farm Mutual Automobile Insurance Company:* [10]

Our court of appeals has given the following interpretation to the word "theft" in an insurance policy:

The modern trend today, where the word "theft" is not defined in the insurance policy, is to give it a liberal construction, namely a common and ordinary meaning according to the understanding of persons in ordinary walks of life. ... The term "theft" has been construed to include any wrongful deprivation of the property of another without claim or color of right, ... the fraudulent and wrongful taking of the property of another. ...

*Pacific Indemnity Co. v. Kohlhase,* 9 Ariz.App. 595, 598, 455 P.2d 277, 280 (1969) (citations omitted) But see, e.g., *Boggs v. Motors Insurance Corp.,* 139 A.2d 733 (D.C.App.1958); Annot., supra. We believe the rule formulated in *Pacific Indemnity Co. v. Kohlhase,* supra, is the more modern and better rule. The rule

---

5. *General Accident Fire and Life Assurance Corp. v. Denhardt,* 253 A.2d 450 (D.C.1969); *Boggs v. Motors Insurance Corp.,* 139 A.2d 733 (D.C. 1958); *Great American Indemnity Co. v. Yoder,* 131 A.2d 401 (D.C.1957).

6. 203 Okl. 530, 223 P.2d 757 (1950).

7. E.G. *Almadova v. State Farm Mutual Automobile Ins. Co.,* 133 Ariz. 81, 649 P.2d 284 (1982); *Massachusetts Fire & Marine Ins. Co. v. Cagle,* 214 Ark. 189, 214 S.W.2d 909 (1948); *Farm Bureau Mutual Ins. Co. v. Carr,* 215 Kan. 591, 528 P.2d 134 (1974).

8. Supra at note 5.

9. *Edwards v. State Farm Mutual Automobile Ins. Co.,* 296 N.W.2d 804, 806 (Iowa 1980).

10. 649 P.2d at 287.

recognizes the inherent ambiguity of the word "theft" in an insurance policy which contains no further definition, and adopts a definition more in tune with the common usage of the word "theft."

We hold, therefore, that where the terms "theft" or "larceny" are used in the grant of coverage in an automobile insurance policy, but are not clearly defined or limited, they are ambiguous and should be interpreted broadly to include a loss caused by any unlawful or wrongful taking of the insured vehicle with criminal intent, whether or not such taking technically qualifies as embezzlement, theft or larceny at common law. See *Farm Bureau Mutual Insurance Co. v. Carr*, 215 Kan. 591, 594, 528 P.2d 134, 138 (1974); *Modern Sounds & Systems v. Federated Mutual Insurance Co.*, 200 Neb. 46, 50, 262 N.W.2d 183, 187 (1978); *Rudolph v. Home Indemnity Co.*, 138 N.J.Super. 125, 136, 350 A.2d 285, 292 (1975); *Munchick v. Fidelity & Casualty Co. of New York*, 2 Ohio St.2d 303, 305–06, 209 N.E.2d 167, 170 (1965). Therefore, if Raines-Fairchild took possession of the car with a present intention not to pay for it, the loss would be within the coverage of the policy.

We now hold that a policy offering coverage for the theft or larceny of an automobile, without further specific exclusions or definitions of the terms, covers a wrongful taking of that automobile, regardless of whether the taking is accomplished through trespass or through fraud. *Thompson v. Connecticut Fire Ins. Co.*[11] in as far as it holds to the contrary, is expressly overruled.

In taking this position we observe the fact that most contracts of insurance are prepared by the insurer and that the insurer may draft provisions to specifically exclude coverage of the loss of a vehicle where the insured has been persuaded to part with possession of the vehicle through fraudulent means.[12] However, in the absence of such specific language, coverage of theft or larceny shall be deemed to include all acts which common parlance would place within those terms. Our pronouncement today shall be given effect in the present case and, prospectively, to all insurance losses occurring after mandate herein is issued.[13]

## II.

Appellant also contends that the coverage of appellee's loss was specifically excluded by provisions of the insurance contract. The exclusion provisions relied upon by appellant state:

EXCLUSIONS—SECTION II
THIS INSURANCE DOES NOT APPLY UNDER:

. . . .

(c) COVERAGES, D, F, G, H and R:

. . . .

(3) WHILE THE OWNED MOTOR VEHICLE IS SUBJECT TO ANY BAILMENT LEASE, CONDITIONAL SALE, PURCHASE AGREEMENT, MORTGAGE OR OTHER ENCUMBRANCE, NOT DECLARED IN THIS POLICY:

. . . .

(e) COVERAGES D AND R TO LOSS DUE TO CONVERSION, EMBEZZLEMENT OR SECRETION BY ANY PERSON IN POSSESSION OF THE OWNED MOTOR VEHICLE UNDER A BAILMENT LEASE, CONDITIONAL SALE, PURCHASE AGREEMENT, MORTGAGE OR OTHER ENCUMBRANCE.

The trial court specifically found that appellee's loss did not come under the terms of these exclusions. Upon review of the matter we agree with the trial court.

It is well settled law that an agreement induced through actual fraud is

---

**11.** Supra at note 6.

**12.** See *Milburn v. Federated Mutual Implement and Hardware Ins. Co.*, 349 P.2d 644 (Okla. 1960).

**13.** *Snethen v. Oklahoma State Union of the Farmers Educational and Cooperative Union of America*, 664 P.2d 377 (Okla.1982).

not a valid agreement.[14] There is no question here of the fact that appellee was induced to part with possession of his automobile through fraud. Thus there was no "conditional sale" or "purchase agreement" in existence in this case to which the exclusions could apply. In taking this position we specifically reject the reasoning of *Boggs v. Motors Insurance Corp.,*[15] relied upon by appellant, which does not recognize the effect of fraud on the existence of an agreement.

■ The portion of the exclusion provisions which negates coverage in the event of conversion, embezzlement or secretion by one in possession under the terms of an agreement would thus be effective where the initial agreement under which possession was obtained was itself valid.

### III.

■ Appellant also contends that it was error for the trial court to enter summary adjudication on the liability issue due to the presence of legitimate inferences from the facts which favored appellant's position that appellee had entered into a conditional sale of the automobile. We do not agree. It is uncontroverted that the "purchaser" of appellee's automobile had no intention of honoring the supposed agreement. Under these facts, as made clear in Part II of this opinion, no inference of the existence of a conditional sale is permissible.

### IV.

■ Appellant finally challenges the trial court's entry of judgment for damages under the insurance contract and the separation of the bad faith refusal theory for separate jury trial. While we do not necessarily approve of the trial court's handling of this matter, we do note the absence of any objection on the part of appellant to this course of conduct. In the absence of a showing of prejudice from this action, appellant's tacit acquiescence will be deemed

to bar the assertion of this action as error.[16]

### V.

The trial court's interlocutory summary adjudication as to the issue of appellant's liability under the insurance contract with appellee and the judgment for damages under that contract are affirmed. The writ of prohibition previously issued in this case is dissolved and the cause remanded for further proceedings.

SIMMS, C.J., DOOLIN, V.C.J., and WILSON, KAUGER and SUMMERS, JJ., concur.

HODGES, HARGRAVE and OPALA, JJ., dissent.

---

14. See *James Talcott, Inc. v. Finley,* 389 P.2d 988, 992 (Okla.1964).

15. Supra note 5.

16. See *Missouri-Kansas-Texas-Railroad Co. v. Callison,* 383 P.2d 696 (Okla.1963).