No. 93–6047.  WILLS v. TEXAS.  Ct. Crim. App. Tex.  Certiorari denied.

JUSTICE O'CONNOR, concurring.

As JUSTICE BLACKMUN details, post, p. 1098, petitioner appears to have a strong claim under Penry v. Lynaugh, 492 U. S. 302 (1989), that the jury at his capital sentencing trial was unable to give mitigating effect to his mental retardation.  It has been the traditional practice of this Court, however, to decline to review claims raised for the first time on rehearing in the court below.  See Radio Station WOW, Inc. v. Johnson, 326 U. S. 120, 128 (1945) ("Questions first presented to the highest State court

on a petition for rehearing come too late for consideration here, *unless* the State court exerted its jurisdiction [over them on rehearing]") (emphasis added). Following this practice here makes good sense because we do not have the benefit of a decision analyzing the application of *Penry* to the facts of petitioner's case. Petitioner is free to bring his *Penry* claim to the attention of the Texas courts in a postconviction proceeding. See *Ex parte Kunkle,* 852 S. W. 2d 499, 502, n. 3 (Tex. Crim. App. 1993) (*Penry* claims are cognizable in state habeas despite an applicant's failure to raise them on direct appeal). If he is unsuccessful in state court, petitioner can proceed to federal court and petition for a writ of habeas corpus. Because these avenues of relief are sufficient to afford full review of petitioner's substantial constitutional claim, I concur in the denial of the petition for a writ of certiorari.

JUSTICE BLACKMUN, dissenting.

Petitioner Bobby Joe Wills, a mentally retarded capital defendant who was 17 at the time of his offense, was sentenced to death in Texas without the jury's being allowed to give mitigating effect to his mental impairment. Petitioner's death sentence thus was imposed in direct violation of *Penry* v. *Lynaugh,* 492 U. S. 302 (1989), and is devoid of the reliability the Constitution requires before death can be the appropriate punishment. See *Woodson* v. *North Carolina,* 428 U. S. 280, 305 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.).

Petitioner has an IQ of 61.[1] At his trial in 1985, petitioner's counsel introduced evidence of petitioner's mental retardation to challenge only the reliability of his confession and his *mens rea* to commit the offense. At the close of the guilt phase, the prosecutor admonished the jury not to "'have any sympathy for the defendant because he's a little slow or he's borderline mentally retarded . . . . Don't say, Poor Old Bobby Joe, he's a little slow, he's borderline mentally retarded. Let's give him a break.'"

---

[1] At the time of petitioner's trial, the American Association on Mental Retardation classified individuals with an IQ score between 50–55 and 70 as having "mild" retardation. See *Penry* v. *Lynaugh,* 492 U. S. 302, 308, n. 1 (1989). In 1992, the association revised its classification to identify individuals with an IQ of 75 or below as presumptively retarded. See AAMR, Mental Retardation: Definition, Classification, and Systems of Supports 14 (9th ed. 1992).

Pet. for Cert. 10. At the penalty phase, the jurors were asked to answer Texas' two standard "special issues": "Did [Wills] act deliberately when he murdered . . . ? Is there a probability that he will be dangerous in the future?" See *Penry,* 492 U. S., at 320. The prosecutor repeatedly commanded the jurors to consider only these questions and reminded them: " 'You're not asked, "Was the defendant given an unfair chance at life?" ' " Pet. for Cert. 11. After reviewing petitioner's unstable past, the prosecutor concluded that "all the counselors and all the psychologists and all the teachers and all the case workers and all the supervisors can't do anything for Bobby Joe Wills. *They can't rehabilitate Bobby Joe Wills." Ibid.* (emphasis added). The jury returned affirmative answers to both special issues and sentenced petitioner to death.

*Penry* v. *Lynaugh* was decided while petitioner's direct appeal was pending. Recognizing that mental retardation may render a defendant "less morally 'culpable than defendants who have no such excuse,' " 492 U. S., at 322, quoting *California* v. *Brown,* 479 U. S. 538, 545 (1987) (O'CONNOR, J., concurring), this Court held that Texas' execution of a mentally retarded defendant, without the jury's being instructed that it could consider and give mitigating effect to his mental impairment in imposing sentence, would violate the Eighth Amendment. A rational juror, this Court observed, readily could conclude that a mentally retarded capital defendant had killed deliberately and was likely to be dangerous in the future, while also concluding that mercy and the defendant's reduced culpability for the crime made his execution inappropriate. Texas' capital sentencing scheme allowed a jury to give effect to the former conclusion but not the latter, and thus eliminated "a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson,* 428 U. S., at 304 (opinion of Stewart, Powell, and STEVENS, JJ.).

Like Penry, petitioner was condemned to die by the State of Texas without the jury's ever having had an opportunity to give a "reasoned *moral* response to the defendant's background, character, and crime." *Brown,* 479 U. S., at 545 (O'CONNOR, J., concurring). His sentence therefore runs the constitutionally intolerable risk that the death penalty has been imposed despite the presence of factors that may justify a sentence less than death.

See *Lockett* v. *Ohio*, 438 U. S. 586, 605 (1978) (opinion of Burger, C. J.).[2]

It is possible that petitioner's claims may be better addressed in state and federal postconviction proceedings. Even if I did not believe that the death penalty cannot be fairly administered within the constraints of our Constitution, see *Callins* v. *Collins*, 510 U. S. 1141, 1143 (1994) (BLACKMUN, J., dissenting from denial of certiorari), however, because the execution of this mentally retarded juvenile offender would constitute a miscarriage of justice, I would grant the petition, vacate the death sentence, and remand for resentencing. I therefore dissent.

---

[2] Petitioner additionally claims that the execution of mentally retarded juvenile offenders is cruel and unusual punishment in violation of the Eighth Amendment. This Court has recognized that youth, like mental retardation, reduces a defendant's criminal culpability and may render the imposition of society's ultimate retributive sanction inappropriate. See, *e. g., Eddings* v. *Oklahoma*, 455 U. S. 104, 115–116 (1982); *Thompson* v. *Oklahoma*, 487 U. S. 815 (1988) (striking death sentence for juvenile offender under age 16); but see *Stanford* v. *Kentucky*, 492 U. S. 361 (1989) (declining to declare capital punishment *per se* invalid for juvenile offenders age 16 or older). That such executions violate society's "evolving standards of decency," *Trop* v. *Dulles*, 356 U. S. 86, 101 (1958) (plurality opinion), is consistent, of course, with international practice, which condemns the execution of both the mentally disabled and juvenile offenders. At least 72 countries that *retain* the death penalty restrict its administration to persons age 18 or over at the time of the offense. Amnesty International, Open Letter to the President on the Death Penalty 8, n. 10 (1994). The United States thus "stands almost alone in the world in still executing offenders who were under-18 at the time of the crime." *Id.*, at 8. See generally W. Schabas, The Abolition of the Death Penalty in International Law (1993).