The CITY OF OKLAHOMA CITY, a municipal corporation; Oklahoma City Airport Trust; Oklahoma City Public Property Authority; Oklahoma City Water Utilities Trust; and Central Oklahoma Transportation and Parking Authority, public trusts, Appellees,

v.

The STATE of Oklahoma ex rel. OKLAHOMA DEPARTMENT OF LABOR, Appellant.

No. 85888.

Supreme Court of Oklahoma.

Oct. 10, 1995.

As Corrected Oct. 13, 1995.

Opinion Supplementing Decision on Rehearing May 14, 1996.

William O. West, Municipal Counselor, Diane Lewis, Deputy Municipal Counselor and Michelle G. Porta, Craig B. Keith, Assistant Municipal Counselors, Oklahoma City, for City of Oklahoma City, Oklahoma City Airport Trust, Oklahoma City Public Property Authority, Oklahoma City Water Utilities Trust, Central Oklahoma Transportation and Parking Authority.

W.A. Drew Edmondson, Attorney General of Oklahoma, Scott D. Boughton, Assistant Attorney General, Litigation Division, Oklahoma City, for The State of Oklahoma ex rel. Oklahoma Department of Labor.

McCaffrey & Tawwater by Loren Gibson, Oklahoma City, for Amicus Curiae Oklahoma State Building and Construction Trades Council, Steve Skinner and Jimmy Fish.

HODGES, Justice.

This dispute concerns the constitutionality of Oklahoma's Minimum Wages on Public Works Act, Okla.Stat. tit. 40, §§ 196.1–196.14 (1991), also known as the Prevailing Wage Act or the Little Davis–Bacon Act. This Court holds that the Act violates article IV, section 1, and article V, section 1 of the Oklahoma Constitution. It delegates the power to determine prevailing wages to a department of the federal government without setting standards for the exercise of that determination. Other assertions of unconstitutionality need not be addressed.

The City of Oklahoma City (City) became concerned about dramatic increases in the prevailing wage between October 31, 1994, and December 30th of that year. The Oklahoma City Airport Trust filed a "Request for a Hearing, Protest and Objection to the Validity of the Prevailing Wage Rate Act, and Request to Void or Amend the Prevailing Wage Rates" with State Labor Commissioner, Brenda Reneau, asking her to review the wage determinations. In response, Reneau explained that, pursuant to the Act, the determinations were made by the United States Department of Labor and that she had no statutory authority to investigate errors on inaccuracies in the federal determinations.

The City and four of its public trusts then filed an action in the district court seeking declaratory judgment, a permanent injunction, and a petition for review of the Labor Commissioner's decision that she had no authority to review the federal agency's wage determinations. The City moved for summary judgment raising several theories as to how the Act was void because it violated the Oklahoma Constitution. The trial court granted the motion without articulating the bases upon which the Act was constitutionally infirm.

The appeal, brought by the State of Oklahoma to this Court, is governed by the accelerated procedures found in Rule 1.203 of the Rules of Appellate Procedure in Civil Cases, Okla.Stat. tit. 12, ch. 15, app. 2 (Supp.1994). The parties were allowed to brief the issues on appeal. In addition, the Oklahoma State Building and Construction Trades Council was allowed to file a brief as amicus curiae.

■ The challenged Act was promulgated in 1965. It mirrors provisions of the federal Davis–Bacon Act, 40 U.S.C. §§ 276a–276a–5 (1994), which requires the payment of prevailing wages on federally financed construction projects. The Oklahoma Act declares the policy underlying its passage:

It is hereby declared to be the policy of the State of Oklahoma that a wage of no less than the prevailing hourly rate of wages for work of a similar character in

the locality in which the work is performed shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of maintenance work.

Okla.Stat. tit. 40, § 196.1. Thus, the Act prohibits state and local governments from driving down the amount of workers' wages through competitive bidding.

The Act applies to the erection, construction, or improvement of any structure or building constructed for public use costing over $600,000.00. *See id.* at §§ 196.2(7) & 196.2a. Since the Act's inception, its provisions have not applied to the Department of Transportation or the Turnpike Authority in the construction of roads. *Id.* at § 196.12.

The Act originally gave Oklahoma's Labor Commissioner complete authority to compile wage data and to determine prevailing wages. These determinations were made independently from any determination made by the United States Department of Labor. The Act required Oklahoma's Labor Commissioner to file wage determinations on July 1st of each year. Objections to those determinations were heard by the Labor Commissioner. Appeals from the commissioner's decisions were filed in district court.

In 1981, the Oklahoma Legislature amended the Act to provide that the prevailing wage, already determined by the United States Department of Labor for federally funded projects pursuant to the Davis–Bacon Act, be adopted by Oklahoma's Labor Commissioner. *Id.* at § 196.6. The Labor Commissioner can now determine a prevailing wage only when the United States Department of Labor has not determined the prevailing wage in a particular category of work or in a particular geographic area. No procedure was provided to protest or challenge a federal wage determination before Oklahoma's Labor Commissioner or in Oklahoma courts. A 1985 amendment to the Act provides for review only of wage rates set by the Labor Commissioner for a locality for which a federal determination has not been made.

The City charges that the Act impermissibly delegates the authority to make wage determinations to a federal agency while leaving Oklahoma's Labor Commissioner

with no authority to check the accuracy of these determinations. The State of Oklahoma argues that the delegation is permissible because the United States Department of Labor is merely implementing the legislative policy articulated in the Act when it makes wage determinations.

Section 1 of article IV of the Oklahoma Constitution provides:

> The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.

Section 1 of article V requires that "[t]he Legislative authority of the State shall be vested in a Legislature consisting of a Senate and House of Representatives...." From these constitutional provisions comes the prohibition against the delegation of legislative power.

■ The prohibition "rests on the premise that the legislature must not abdicate its responsibility to resolve fundamental policy making by [1] delegating that function to others or [2] by failing to provide adequate directions for the implementation of its declared policy." *Democratic Party v. Estep,* 652 P.2d 271, 277 n. 23 (1982). The facts of this case concern the second aspect of the prohibition.

The 1965 version of the Act prescribed the manner in which Oklahoma's Labor Commissioner determined prevailing wages. It gave the Labor Commissioner the responsibility to "investigate and determine the prevailing hourly rate of wages in the localities." 1965 Okla.Sess.Laws 580. It specifically instructed the Commissioner to "consider the applicable wage rates established by collective bargaining agreements, if any, and such rates as are paid generally within the locality." *Id.* It instructed the Commissioner how to conduct hearings on objections to wage determinations. It also gave the Commissioner subpoena power and the authority to administer oaths. *Id.* at 581.

Since the 1981 amendments, however, the Act has provided no definite standards or articulated safeguards for the United States Department of Labor to follow in implementing the legislative policy declared in the Act. The current Act leaves an important determination to the unrestricted and standardless discretion of unelected bureaucrats. Worse, it delegates to an administrative arm of the federal government. As a result, the federal agency which actually determines the prevailing wage is less answerable to the will of the people of Oklahoma than is the Labor Commissioner who holds elected office. It leaves public entities with no Oklahoma forum in which to challenge the accuracy of the United States Department of Labor's wage determinations.

When faced with a challenge to Arkansas' prevailing wage law, the Arkansas Supreme Court declared that its Act unconstitutionally delegated legislative authority. *See Crowly v. Thornbrough*, 226 Ark. 768, 294 S.W.2d 62 (1956). That court noted:

> The Act fails to establish a standard or formula by which a wage scale may be formulated; but rather delegates to the Secretary of Labor of the United States the right to fix the minimum wage scale to be paid in a particular area of this State. The State retains no control over the Secretary of Labor of the United States. Therefore, the Act violates [provisions of] our State Constitution.

*Id.* at 66. After the decision, Arkansas revised its prevailing wage law to provide that the Arkansas Department of Labor would investigate and determine prevailing wages. Ark.Code Ann. § 22–9–313. Specific guidelines are provided to that department. *See id.*

Of the thirty-one states that currently have a prevailing wage law, only Oklahoma's version delegates authority to the United States Department of Labor as the sole method of determining the prevailing wage. Connecticut gives its Labor Commissioner the option of holding a hearing to determine the prevailing wage or adopting the federal determination. Conn.Gen.Stat.Ann. § 31–53(d). In Oregon, the Commissioner of the Bureau of Labor and Industry may use the federal wage only if local wage data are not available in a particular locality. Or.Rev.Stat. § 279.350. These limited delegations of authority to the federal government have not been challenged in either state.

In the other prevailing wage law states, the wage determination is assigned to a state official, an appointed committee, or the authority awarding the contract. Therefore, challenges to the delegation of wage determinations in those states have involved delegation to entities other than the federal government. *See* Annotation, *Validity of Statute, Ordinance, or Charter Provision Requiring that Workmen on Public Works be Paid the Prevailing or Current Rate of Wages*, 18 A.L.R.3d 944, 965 (1968).

Oklahoma's Act suffers from the same constitutional infirmity as did the Arkansas Act. It is not enough that the Legislature declared its policy in the Act, because no standard was established to implement the wage determinations. As this Court has noted: "No matter how laudable a piece of legislation may be in the minds of its sponsors, objective guidelines or standards should appear expressly in the Act." *Estep*, 652 P.2d at 277 n. 25. Otherwise, legislative authority is abdicated.

■ The current version of Oklahoma's Act fails to articulate the necessary guidelines or standards for determining prevailing wages. Thus, it impermissibly delegates legislative power. The trial court did not err in granting the City's motion for summary judgment.

■ The State of Oklahoma and amicus urge that if portions of the Act are held unconstitutional, the remaining portions of the Act are severable and should stand. Section 11a(2) of title 75 provides:

> For acts enacted prior to July 1, 1989, whether or not such acts were enacted with an express provision for severability, it is the intent of the Oklahoma Legislature that the act or any portion of the act or application of the act shall be severable unless:
>
> a. the construction of the provisions or application of the act would be incon-

sistent with the manifest intent of the Legislature;

b. the court finds the valid provisions of the act are so essentially and inseparably connected with and so dependent upon the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or

c. the court finds the remaining valid provisions standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

The offending provision of the Prevailing Wage Act is section 196.6 which delegates the determination of prevailing wages to the United States Department of Labor. In the absence of this section, the valid sections of the Act, standing alone, are "incomplete and incapable of being exercised in accordance with the legislative intent." *Id.* at § 11a(2)(c). This is because the federal wage can no longer be used and no Oklahoma entity is authorized to make its own determination where the United States Department of Labor has already done so. That leaves a legislative intent that the prevailing wage be paid but no one authorized to make the wage determination. Therefore, the entire Act must fail. It will be for the Legislature to decide whether the Act will be reenacted in a form that delegates the authority to an agency of this state with proper guidelines to implement the prevailing wage determination.

AFFIRMED.

HODGES, LAVENDER, HARGRAVE, OPALA and WATT, JJ., concur.

WILSON, C.J., KAUGER, V.C.J. and SUMMERS, J., concur in result.

SIMMS, J., concur in part, dissent in part.

## SUPPLEMENTAL OPINION ON REHEARING

PER CURIAM.

■ The Attorney General [AG] asks on rehearing that we clarify the *retrospective* contours of our October 10, 1995 pronouncement, which condemns as unconstitutional the provisions of 40 O.S.1991 §§ 196.1–196.14, the so-called Little Davis–Bacon (or Prevailing Wage) Act. We are urged that the court's opinion should be given a limited backward reach[1] because "hundreds" of laborers' prevailing-wage claims and "numerous" contracts will be affected by our *sentence of nullity*. The AG argues that if the declaration of a statute's invalidity has *not* been clearly foreshadowed or likely would impose undue hardships, the new rule's impact might be confined to prospective application. His stated goal for pressing the issue in the postdecisional stage is (a) to prevent "costly litigation" by parties who would doubtless seek to enforce "vested rights" and (b) to avoid any "undeserved windfall" to

1. For a discussion of the common-law rule that gives retroactive effect to judicial decisions and of its recognized exceptions, see *infra* note 6. A fashionable recent genre of prospective application is called the "pipeline doctrine". The concept embodied in that approach saves from extinction those interests that are presently in litigation (i.e., the case before the court and the cases pending before trial tribunals or in the appellate litigation process) or those capable of being litigated when the new rule is announced. For Oklahoma jurisprudence that applies a new rule of law to cases in the pipeline, see *Globe Life Acc. Ins. Co. v. Oklahoma Tax Com'n*, Okl., 913 P.2d 1322, 1329 (1996); *Schulte v. Oklahoma Tax Com'n*, Okl., 882 P.2d 65, 75 (1994); *Strelecki v. Oklahoma Tax Com'n*, Okl., 872 P.2d 910, 915 n. 44 (1994); *Dow Jones & Co. v. State ex rel. Tax Com'n*, Okl., 787 P.2d 843, 847 (1990); *Schepp v. Hess*, Okl., 770 P.2d 34, 39 (1989); *Beauchamp v. Southwestern Nat. Ins. Co.*, Okl., 746 P.2d 673, 676–677 (1987); *A.E. v. State*, Okl., 743 P.2d 1041, 1044 (1987); *Amoco Production v. Corp. Com'n of Okl.*, Okl.App., 751 P.2d 203, 208 (1986); *Mann v. State Farm Mut. Auto. Ins. Co.*, Okl., 698 P.2d 925, 929 (1985); *Unah v. Martin*, Okl., 676 P.2d 1366, 1370 (1984); *Snethen v. Oklahoma State Union of the Farmers Educational & Cooperative Union of America*, Okl., 664 P.2d 377, 382 (1983). *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 536–537, 111 S.Ct. 2439, 2444–2445, 115 L.Ed.2d 481 (1991), is a U.S. Supreme Court refinement of the pipeline doctrine aimed at securing equality for all pending claims (or for those capable of being litigated) when the new rule is announced. *See also Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97–98, 113 S.Ct. 2510, 2518, 125 L.Ed.2d 74 (1993).

contractors. None of the parties (or amici curiae) has briefed the precise issue now tendered, either below or on appeal. The appellees (Oklahoma City and four of its public trusts) have not challenged the AG's call for limited retrospectivity of our pronouncement.

## A.

### The Limits Of Our Sua Sponte Jurisprudence

The AG's *sweeping* expectations can be met only insofar as extant jurisprudence will permit.[2] A new rule's prospective effect may be resolved *sua sponte* when the parties harmed by the condemned law *are before the court.*[3]

Because the appellees—*qua* public construction-site owners subject to prevailing-wage payment (called in this opinion "public builders")—were adversely affected by the mandatory *prevailing-wage clauses* and are parties to this litigation, we deem ourselves free to consider *sua sponte*, at the rehearing stage, what retrospective reach the October 10, 1995 pronouncement ought to be given. The affected public agencies seem entitled to know if they can harvest the fruit of their October 10 victory for their past, current and future construction contracts.

We reject the AG's quest for our pronouncement's sweeping prospectivity. That argument raises a host of questions about laborers' (or about other) claims that are rested on the prevailing-wage rate's *applicability* to a given contract in suit. All those claims (which do or would arise out of contracts that stand unaffected by our sentence of nullity in this case) cannot be resolved in this appeal. The issues tendered by them are not before us in an adversary posture. Claimant-laborers are not only strangers to this litigation,[4] they are not even included as parties to public-construction contracts. As for the AG's call for our clarification of those claims, we answer today that nonjurisdictional issues, *pressed for the first time on rehearing,* are generally deemed unfit for review.[5]

## B.

### The Prospective Reach of Our Opinion

The only prospectivity-related issue we may and do decide on rehearing is whether prevailing-wage contract clauses in pre-opinion contracts stand subject to our sentence of nullity.

Because it is clear that our opinion settles a significant first-impression controversy, it should not be given *unlimited retroactivity.*[6] We hence hold that: (a) pub-

2. For Oklahoma jurisprudence limiting *sua sponte* a new rule of law to *pipeline* cases, see *Globe Life, supra* note 1 at 1329; *Schulte, supra* note 1 at 73 n. 30; *Amoco, supra* note 1 at 208; *Schepp, supra* note 1 at 39; *Dow Jones, supra* note 1 at 847; *Snethen, supra* note 1 at 382; *Beauchamp, supra* note 1 at 676–677; *A.E., supra* note 1 at 1044; *Mann, supra* note 1 at 929; *Unah, supra* note 1 at 1370.

3. *See, e.g.,* the cases cited in *supra note 2.*

4. The Oklahoma State Building and Construction Trades Council (representing laborers' interests) was granted leave to file an amicus curiae brief in this case. Amici curiae cannot expand the contours of a litigated controversy; their participation must stand confined to issues raised in the trial tribunal and preserved for review. *Gettler v. Cities Service Co.,* Okl., 739 P.2d 515, 518 (1987); *Teleco, Inc. v. Corporation Commission,* Okl., 649 P.2d 772, 774 (1982).

5. *See Brigance v. Velvet Dove Restaurant,* Okl., 756 P.2d 1232, 1234 (1988); *Pirrong v. Pirrong,*

Okl., 552 P.2d 383, 387 (1976); *Pointer v. Hill,* Okl., 536 P.2d 358, 361 (1975); *Brown v. State Election Bd.,* Okl., 369 P.2d 140, 151 (1962); *Hope v. Peck,* 38 Okl. 531, 134 P. 33 (1913). For similar federal jurisprudence, see *Wills v. Texas,* —— U.S. ——, 114 S.Ct. 1867, 128 L.Ed.2d 488 (1994) (O'Connor, J., concurring); *Hoover v. Ronwin,* 466 U.S. 558, 574 n. 25, 104 S.Ct 1989, 1998 n. 25, 80 L.Ed.2d 590 (1984); *Radio Station WOW v. Johnson,* 326 U.S. 120, 128, 65 S.Ct. 1475, 1480, 89 L.Ed. 2092 (1945).

6. The rule of *limited retroactivity* is an exception carved out of the common-law rule of *general retroactivity* (the latter rule gives retroactive effect to judicial decisions). U.S. Supreme Court jurisprudence has long recognized that the rule of *general retroactivity* applies to constitutional decisions. *Harper, supra* note 1, 509 U.S. at 97–98, 113 S.Ct. at 2518 (citing *Robinson v. Neil,* 409 U.S. 505, 507, 93 S.Ct. 876, 877, 35 L.Ed.2d 29 (1973), and *Kuhn v. Fairmont Coal Co.,* 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (Holmes, J., dissenting)); *see also Strelecki, supra* note 1 at 914 n. 30. Retroactive

lic-construction contracts *negotiated and executed before* the date of the opinion shall be impervious to an attack upon the constitutionality of their prevailing-wage clauses; and (b) contracts, like those described in subparagraph (a), though negotiated *before but executed after* the opinion's date, shall be equally safe from attack absent proof of a *postopinion downward contract price adjustment* (that would reflect a pre-execution rejection of the prevailing-wage clause). This notion tracks the general principle that contracts are made in reliance on the law that is in force at the time of their execution.[7] Regardless of the date a contract was negotiated and executed, we hold today that the opinion's declaration of invalidity will govern this case and *all other public builders' constitutional challenges* of the prevailing-wage clause's validity, which stood pending in the litigation pipeline on October 10, 1995.[8]

## C.

### *Claims That May Survive The Opinion's Sentence Of Nullity Must Await the "Percolation Process"*

■ Because we anticipate a variety of claims and defenses will flow out of public-construction contracts that survive the October 10 sentence of nullity, we express no opinion on their viability *until* they reach us individually in a posture of lively controversy. Their resolution must await "percolation"[9] that will follow in litigation of tomorrow. Issues that undergo an extensive forensic inquiry through the percolation process will provide us with empirical data for fashioning

a fair solution that should be considerate of *all* interests at stake.

## SUMMARY

Prevailing-wage clauses in contracts defined by timeline are to be impervious to a constitutional attack. The opinion's sentence of nullity shall govern this case and all constitutional challenges of the prevailing-wage clause's validity interposed by public builders, whose claims, counterclaims or cross-claims were pending in the pipeline on October 10, 1995. Claims expected to arise out of public-construction contracts that survive this court's declaration of invalidity must be saved for another day.

WILSON, C.J., and HODGES, LAVENDER, HARGRAVE and OPALA, JJ., concur.

KAUGER, V.C.J., and SIMMS, SUMMERS and WATT, JJ., concur in part and dissent in part.

SUMMERS, J., concurring in part and dissenting in part, with whom KAUGER, V.C.J. and WATT, J., join.

The Attorney General requests rehearing for the purpose of determining whether this Court's opinion applies retroactively or prospectively. Appellees have no objection to his request. The general rule is that a court's opinion declaring a statute unconstitutional is retroactive, unless stated otherwise. *Ethics Commission of State of Oklahoma v. Cullison,* 850 P.2d 1069, 1079 (Okla. 1993). See *Strelecki v. Oklahoma Tax Com-*

---

operation of an overruling decision is neither required nor prohibited by the U.S. Constitution. Judicial policy determines whether, and to what extent, a new rule will operate retroactively. *Griggs v. State ex rel. Oklahoma Dept. of Transp.,* Okl., 702 P.2d 1017, 1020 (1985). In *Great Northern Railway v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932), a noncriminal case resolving no question of constitutional dimension, the Court held that a state may choose for itself—free from federal constitutional fetters—between the principle of relation back and forward operation of its precedents.

7. *Sunray DX Oil Company v. Cole,* Okl., 461 P.2d 305, 309 (1969); *Landowners, Oil, Gas & Roy.*

*Own. v. Corporation Com'n,* Okl., 420 P.2d 542, 544 (1966); *Oklahoma Nat. Gas Co. v. Long,* Okl., 406 P.2d 499, 502 (1965).

8. For a discussion of the "pipeline doctrine", see *supra* note 1.

9. Percolation is "the independent evaluation of a legal issue by different courts," which "allows a period of exploratory consideration" before the highest appellate court ends the process with a binding rule. John E. Sexton, *A Managerial Theory Of The Supreme Court Responsibilities: An Empirical Study,* 59 N.Y.U.L.Rev. 681 (1984); Todd J. Tiberi, Comment, *Supreme Court Denials of Certiorari in Conflicts Cases: Percolation or Procrastination?,* 54 U.Pitt.L.Rev. 861 (1993).

*mission,* 872 P.2d 910, 913–916 (Okla.1993). But there are exceptions.

For example, retroactive application does not open final judgments. A judicial proceeding that is final cannot be reopened. *State ex rel. Tharel v. Board of County Commissioners of Creek County,* 188 Okla. 184, 107 P.2d 542, 550 (1940). As explained by the United States Supreme Court: "New legal principles, even when applied retroactively, do not apply to cases already closed." *Reynoldsville Casket Co. v. Hyde,* —— U.S. ——, 115 S.Ct. 1745, 1751, 131 L.Ed.2d 820 (1995).

What about contracts entered into pursuant to the statute prior to October 10, 1995, the date the statute was held unconstitutional? Retroactive application of a new rule of law as to an unconstitutional statute does not necessarily alter such a contract. A contract will survive if it rests on other general constitutionally valid provisions. *Richardson v. Mustang Fuel Corp.,* 772 P.2d 1324, 1326–1327 (Okla.1989); *General Motors v. Oklahoma County Bd. of Equalization,* 678 P.2d 233, 237–238 (Okla.1983); *Board of County Commissioners of Pottawatomie County v. A.C. Davis & Sons,* 184 Okla. 258, 86 P.2d 782 (1939); *Gordon v. Conner,* 183 Okla. 82, 80 P.2d 322 (1938).

A Court's opinion does not reach back in time to invalidate a public contract where the provisions of the contract are valid apart from the unconstitutional Act. Those general laws authorizing government entities to contract, combined with the reliance of the parties, are sufficient to uphold the otherwise valid unchallenged contracts. When the contract was legally binding it is not subject to being invalidated on the basis of this Court's opinion. *Board of Commissioners of Pottawatomie County v. A.C. Davis & Sons, supra; Gordon v. Conner, supra, Richardson v. Mustang Fuel Corp., supra.*

A contract executed after October 10, 1995 is, of course, subject to attack if it incorporates the now unconstitutional statutory wage provisions. This is because public officials cannot rely upon the presumed constitutionality of the infirm Act after our pronouncement on October 10, 1995.

The Court's opinion explains and imposes upon this case, at least for the benefit of the "public builders", its version of the pipeline doctrine. See *Strelecki v. Oklahoma Tax Commission,* 872 P.2d 910, 915 n. 44 (Okla. 1993), which explained how a new rule of law could be applied in cases subject to direct review as opposed to collateral review.

I would state the pipeline doctrine for this case as follows: Those contracts of strangers to this litigation in situations where the contracts became legally binding prior to October 10, 1995, unless subject to administrative or judicial review as of that date, in proceedings where the Constitutionality issue decided in this case is timely raised, are not subject to being invalidated on the basis of this Court's opinion. *Board of Commissioners of Pottawatomie County v. A.C. Davis & Sons, supra; Gordon v. Conner, supra, Richardson v. Mustang Fuel Corp., supra.* Those entities in the pipeline (as explained above) as of that date should have the benefit of our declaration of the statute's invalidity, even though their contracts pre-dated October 10, 1995.