STATE of Oklahoma on Behalf of the RATEPAYERS OF PUBLIC SERVICE COMPANY of Oklahoma, Appellant,

v.

PUBLIC SERVICE COMPANY OF OKLAHOMA and The Oklahoma Corporation Commission, Appellees.

No. 52678.

Supreme Court of Oklahoma.

July 15, 1980.

Jan Eric Cartwright, Atty. Gen., Charles Rogers, Richard Berger, Asst. Attys. Gen., Oklahoma City, for appellant.

Everett L. Cunningham, Tulsa, for appellees.

DOOLIN, Justice:

The Public Service Company of Oklahoma (PSO), a Tulsa based electric generating utility, was granted approval of its existing fuel adjustment clause by the Oklahoma Corporation Commission (COMMISSION). The Attorney General appeals to this Court on two grounds:

(1) Should PSO be permitted to recover exploration and drilling costs in the fuel adjustment clause.

(2) Must the Commission make a specific finding that transportation charges of natural gas from wellhead to generating plant are "fair, just and reasonable," or can that be inferred from Commission approval of the transportation charges in general?

PSO has two contracts with Transok Pipeline Co., a wholly owned subsidiary of PSO. One contract calls for Transok to act as PSO's agent in arranging exploration and drilling agreements with independent companies to find and develop additional supplies of natural gas for PSO's gas-fired electric generating plants. The other contract deals with transporting gas to the PSO generating plants. (PSO purchases some gas from independent producers and explores and drills its own wells through Transok).

A fuel adjustment clause allows a utility to adjust its charges as the basic cost of fuel increases (or decreases).[1] For the purpose of determining fuel or gas costs the legislature has set out a formula:

1. If purchased from a non-affiliated firm, it's the actual cost of fuel or gas purchased:

2. If purchased from an affiliated firm:

(a) Fuel (other than gas): actual cost of production;

(b) Gas: fair field price.[2]

Statutes provide a working definition of "fair field price" as "the going price paid by the utility, subsidiary or affiliate to others in the field where such production is located."[3]

Statutes also provide for the inclusion of costs of delivery into the utility system by an "affiliate" firm only if the Commission finds that such costs are "fair, just and reasonable," and beyond the point of delivery into the utility's system only if failure to allow such costs "will substantially threaten the ability of the utility to earn a reasonable rate of return."[4]

The Attorney General argues the Commission exceeded its authority under 17 O.S.Supp.1977 § 251 by permitting PSO to compute its cost of fuel by using the Federal Energy Regulatory Commission's Uniform System of Accounts, in that this Uniform System contains items which are subject to only some fluctuation in cost (2–3 times a year). He contends the Legislature did not intend to allow any costs for fuel adjustment purposes which were not of an unstable and erratic nature, such as the actual cost of gas at the wellhead. These items include traveling expenses of personnel, other supplies and freight. However, we find that adoption of such Uniform Sys-

1. 17 O.S.Supp.1977 § 250(5). PSO reports its cost of fuel has increased from 21% of its gross revenue in 1973 to 54% in 1977, reflecting the rise in the cost of natural gas from .30 per MCF in 1973, to $1.35 in 1977. Without the fuel adjustment clause PSO contends its return on common equity would have dropped from 10.6% in 1973 to 3% in 1977.

2. 17 O.S.Supp.1977, § 251(C)(1).

3. 17 O.S.Supp.1977, § 250(4).

4. 17 O.S.Supp.1977, § 251(C)(2).

tem is within the Commission's realm of authority and does not conflict with 17 O.S. Supp.1977 § 251. We note 17 O.S.Supp.1979 § 270 authorizes the Commission ". . . to process applications for determinations as provided for in the rules and regulations issued by the Federal Energy Regulatory Commission."

### Exploration Charges

■ To determine if the utility should be allowed to recover expenses for exploration and drilling we seek enlightenment from the statute itself. The Attorney General would have us look at the Legislative committee report on S.B. 273, which became 17 O.S.Supp.1977 §§ 250–255, to discover Legislative intent regarding "cost." However, aside from the fact that these reports were not adopted into the Act which finally passed, they are at best inconclusive, when speaking of "actual costs of fuel at the source of supply (i. e. the wellhead cost of gas . . .)." The Attorney General concludes that the Legislature intended to allow only the cost of the fuel or gas, and that cost should not include the cost of an exploration and drilling program. We disagree.

■ PSO argues that exploration and drilling expenses would be a legitimate part of any gas purchased from a non-affiliated, or independent, producer, as would the cost of transportation of the gas to its generating stations, and therefore PSO should not be penalized for its initiative in finding its own gas and thus assure its customers of an adequate supply of fuel, and hence electricity.

In setting down the three essential guidelines for determining the price paid for fuel, it seems apparent that the Legislature was attempting to equate the costs, no matter whether dealing with an affiliate or a non-affiliate, fuel or gas. Thus it could be argued that "fair field price" is similar in meaning to both "actual cost" and "cost of production." The Legislature surely did not contemplate giving one utility or one fuel a cost advantage over the other.

In this light many states have permitted utilities to recover exploration and drilling costs as operating expenses as a cost of production. In a situation similar to this case the Wyoming Public Service Commission approved advanced payments of $370,-000.00 from a utility company to two gas exploration companies to participate in exploration and drilling programs. The Commission said such expenses are necessary and proper, and authorized the utility to include those expenses in its current rate base.[5] The Pennsylvania Public Utility Commission approved in principle a utility expenditure of $1.25 million in a joint exploratory venture to find new sources of gas.[6]

Annual depreciation on production property, depletion of wasting assets, and amortization of the cost of developing leases, drilling dryholes, abandoned leases, producing holes and geological and scouting activities are costs and expenses properly chargeable to operating expenses, and should be spread over the life of the gas reserves because such costs are incident to the discovery and development thereof.[7]

We hold the Commission did not err in authorizing PSO to recover its exploration and drilling costs as part of the "fair field price" of its gas.

### Transportation Costs

Statutes authorize that charges for transportation of fuel (to the point of delivery into the utility system), provided by an affiliate firm, may be added into the fuel adjustment clause if the Commission finds the charges are "fair, just and reasonable." The Commission may also authorize transportation charges beyond the point of deliv-

**5.** Re Northern Utilities, Inc., 25 PUR4th 365 (1978).

**6.** Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Company, 24 PUR4th 525 (1978).

**7.** Arkansas-Louisiana Gas Co. v. City of Texarkana, Arkansas, 17 F.Supp. 447, 461 (W.D.Ark. 1936).

ery into the utility system if it finds, from reliable evidence, that failure to do so will substantially threaten the ability of the utility to earn a reasonable rate of return.[8] The Commission's order in this case did find that failure to approve transportation charges would "substantially threaten the ability . . . ," but did not make a specific finding of "fair, just and reasonable." It also found that the contracts between PSO and Transok were "beneficial to the ratepayers and are approved." [9]

PSO contends the Commission would not have "approved" the transportation charges with a comment of "beneficial" if it had not found the charges "fair, just and reasonable." It urges this Court to adopt the rule in *Hitt v. Hitt* : [10] "The rule is that a general finding is deemed to include a special finding upon every issue of fact necessary to sustain the judgment rendered." In other words, because the Commission found that the contracts between PSO and Transok were "beneficial" to PSO customers it may be inferred that the transportation costs are "fair, just and reasonable," or that if the Commission had not found that the transportation costs were fair, just and reasonable, it would not have approved them. See 12 O.S.1971 § 611, as a general statutory declaration of this rule.

The Attorney General argues the statute requires a specific finding of "fair, just and reasonable" before transportation charges may be added; that the Corporation Commission cannot say PSO substantially com-

plies with the statutory language by a simple approval of the application.

■ The words "just and reasonable" imply the application of good judgment and fairness, of common sense and justice, to the facts of record. The words are not fixed, unalterable mathematical terms.[11]

■ Our statute is quite specific. It requires the Commission to "find" that the transportation charges are "fair, just and reasonable." Can such be inferred from a finding of "beneficial contracts" or from the Commission's ultimate approval of the fuel adjustment clause? We think not.

In attempting to ascertain legislative intent about the need for a specific versus a general finding of fact, we are not trying to put sense into language already present, but to ascertain the sense already there.[12]

It is our understanding of this statute that the Legislature was trying to protect the public from unreasonable charges for transportation, especially when a wholly-owned affiliate of the utility is supplying the transportation. The only way to accomplish this goal of protection of the public is for the Commission to make a specific inquiry resulting in a specific finding as to the transportation charges. Such a requirement cannot or should not be inferred from mere approval of the fuel adjustment clause, or from a finding that the transportation contracts "benefit" the ratepayers or that to fail to approve such charges would jeopardize the financial position of the utili-

---

8. 17 O.S.Supp.1977 § 251(C)(2).

9. The Commission's order reads in part:
   1. "The PSO method of accounting whereby costs and benefits of its drilling program are flowed through to its customers . . . should be continued . . . ."
   2. "PSO pays Transok for all of the costs of transportation of said fuel . . . Therefore, the Commission finds that the contracts between PSO and Transok Pipe Line Company are *beneficial* to the ratepayers and are approved."
   3. ". . . the fuel adjustment clause by PSO is necessary for its financial stability . . . Changes in the delivered price of fuels . . . portends a likely and substantial threat to the ability of PSO to earn a reasonable rate of return or are likely to

substantially impair the ability of PSO to acquire adequate supplies of fuel . . . The failure to include line losses and all transportation charges in PSO's fuel adjustment clause will substantially threaten the ability of the company to earn a reasonable rate of return.

10. *Hitt v. Hitt*, 258 P.2d 599, 604 (Okl.1953).

11. *Arkansas-Louisiana Gas Co. v. Texarkana*, 96 F.2d 179 (8th Cir. 1938); *Republic Steel Corp. v. Pennsylvania R. Co.*, No. 8471, (1934), as reported at 6 PUR Digest 2d § 120.

12. *In re Assessment of Champlin Refining Co.*, 186 Okl. 635, 99 P.2d 880 (1940).

ty. No such action of the Commission speaks to a finding of fair, just and reasonable charges.

We have previously held that an order of the Commission will be affirmed if it is supported by substantial evidence, and substantial compliance with a statute is shown if it is made to appear that the purpose of the statute has been served.[13]

We hold today that the Commission must make a specific finding of "fair, just and reasonable" in order to approve transportation charges and failure to do so renders approval of such charges invalid.

AFFIRMED IN PART: REVERSED AND REMANDED IN PART.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, HARGRAVE and OPALA, JJ., concur.

SIMMS, J., concurs in part; dissents in part.

---

13. *Barnes v. Transok Pipeline Co.*, 549 P.2d 829 (Okl.1976).