AMOCO PRODUCTION COMPANY, Appellant,

v.

The CORPORATION COMMISSION OF the STATE of OKLAHOMA; composed of the Honorable Hamp Baker, Chairman; the Honorable Norma Eagleton, Vice–Chairman; and the Honorable James B. Townsend, Commissioner; and Bartex Exploration, Inc.; and Berexco, Inc., Appellees.

No. 63664.

Court of Appeals of Oklahoma, Division No. 1.

July 29, 1986.

Rehearings Denied Sept. 23, 1986.

Rehearing Denied Feb. 9, 1988.

John R. Reeves and Jay C. Jimerson, Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, for appellant, Amoco Production Co.

Richard J. Gore and J. Jayne Jarnigan, Mahaffey & Gore, P.C., Oklahoma City, for appellee, Bartex Exploration, Inc.

Cheri M. Wheeler, Corp. Com'n, Oklahoma City, for appellee, Corp. Com'n of the State.

William C. Anderson, Albert J. Givray, R. Robert Huff, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, for amicus curiae Nova Energy Corp.

REYNOLDS, Judge:

Appellees, Bartex Exploration, Inc., and Berexco, Inc. filed petition for rehearing. Nova Energy Corporation was permitted to file Amicus Curiae brief in support of rehearing. We appreciate Amicus Curiae, Nova's brief in this case. We substitute this opinion for our original May 13, 1986 opinion.

The main issue presented is: Does the Corporation Commission of the State of Oklahoma have the authority to force pool by the wellbore instead of force pooling by the drilling and spacing unit.

R & R Exploration Company, Inc., applied to the Corporation Commission to force pool the drilling rights of oil and gas interest owners in the 640-acre drilling and spacing unit Section 29, Township 12 North, Range 14 West of the IM, Custer County, Oklahoma. Commission pooled sixteen separate common sources of supply under Order No. 199609. Among these were the Springer and the Red Fork zones. Amoco Production Company (Appellant) was designated as operator of the unit under this order, not the pooling Applicant R & R Exploration.

R & R Exploration Company wrote a letter to Amoco and elected not to participate in the well. The letter stated R & R was "to receive an excess royalty of $\frac{1}{8}$ of $\frac{8}{8}$ and deliver a 75% NRI." Ladd and R & R Exploration elected not to participate and were compensated by the pooling order.

After R & R elected not to participate, it assigned to Bartex Exploration, Inc. (Appellee) an undivided 67.5% interest in their lease in Section 29. Subsequent to Ladd's election, it gave a lease to Berexco, Inc. (Appellee) covering Ladd's interest in Section 29.

Amoco timely drilled and completed the unit well, in the Springer zone which was shut-in for approximately 14 months until a pipeline was available. As soon as the Hunnicutt 1-29 well was connected to a pipeline, Amoco commenced operations on the Hunnicutt No. 2-29 as a proposed Red Fork test.

Appellees informed Operator Amoco that they would participate in the Hunnicutt No. 2-29 proposed Red Fork test. Amoco insisted that the original pooling and elections of Appellees' predecessors in title eliminated their participation in subsequent wells in the drilling and spacing unit. Commission, upon request, interpreted its original pooling Order No. 199609. The Commission's Order No. 270540, ruled Appellees had the right to participate in subsequent wells in the spacing unit. The Commission found that the 14 month period was "more than enough time to attempt a completion or evaluation by testing." The

14 month period according to the Commission "clearly separates the two wells in such a fashion so that the Hunnicutt 2-29 could not be construed as a continuation of drilling operations." Amoco appeals this order.

Amoco contends that Order No. 199609 gave it the right to explore all of the sources of supply listed therein and that Order No. 270540 attempts to improperly extinguish vested rights in violation of the Oklahoma Constitution.

Bartex contends that its predecessor in title, R & R Exploration, was never subject to the forced pooling Order No. 199609 and that "even if such interests were adjudicated under Order No. 199609, such interests were not transferred to Amoco." We reject this argument. R & R Exploration was movant in the force pooling application wherein Amoco became operator. The interest force pooled was transferred to Amoco by reason of the pooling. R & R's letter to Amoco specifically stated that under "Order No. 199609, R & R elects to farmout its interest under paragraph 3c". R & R further stated in its letter to Amoco it would deliver a 75% net revenue interest in the drilling and spacing unit.

This decision must be reversed:

I. The order allowing a second election to participate as a working interest owner is not consistent with Oklahoma Statutes.

II. The action by the Corporation Commission is a denial of Substantive Due Process.

III. The Corporation Commission exceeded its jurisdiction.

I

The decision of the Corporation Commission does not follow the pooling statutes our legislature enacted. 52 O.S. 1981 § 87.1(e) specifically states:

... When two or more separately-owned tracts of land are embraced within an established spacing unit ... the owners thereof may validly pool their interests and develop their lands as a *unit*. Where, however, such owners have not

agreed to pool their interests and where one such separate owner has drilled or proposes to drill a well on said unit to the common source of supply, the Commission to avoid the drilling of unnecessary wells, or to protect correlative rights, shall upon a proper application therefor and a hearing thereon, require such owners to pool and develop their lands in the *spacing unit* as a *unit.* All orders requiring such pooling ... shall be upon such terms and conditions as are *just* and *reasonable* and will afford to the owner of such tract in the unit the opportunity to recover or receive without unnecessary expense his *just* and *fair share* of the oil and gas.

■ First, the statute mandates developing the spacing unit as a unit. Operator Amoco is developing the spacing unit as a unit. A 640 acre drilling and spacing order was issued on all 13 common sources of supply. After the spacing order was entered, the unit could be force pooled. *Gulfstream Petroleum Corp. v. Layden,* 632 P.2d 376 (Okl.1981). *Helmerich v. Corporation Commission,* 532 P.2d 419 (Okl. 1975). This pooling was for unit development. A force pooling order unitizes the working interest in the entire unit as to the named formations.

■ Appellees argue 52 O.S.1981 § 87.1 does authorize pooling by the wellbore. They contend the legislature had wellbore pooling in mind since the Statute refers to "a well" or "the well". But to the contrary, a complete reading of the Statute clearly requires pooling the *"spacing unit* as a *unit."*

Appellees cite three cases contending the Supreme Court and Court of Appeals condone pooling by the wellbore: *Woods Petroleum Corporation v. Sledge,* 632 P.2d 393 (Okl.1981); *O'Neill v. American Quasar Petroleum Co.,* 617 P.2d 181 (Okl. 1980). *Southern Union Production Co. v. Eason Oil Co.,* 540 P.2d 603 (Okla.Ct. of App.1975). The language cited from these cases is taken out of context. The issue in *Woods v. Sledge* was whether the District Court was collaterally attacking a Corporation Commission order through a quiet title

action. The Corporation Commission's decision itself was never appealed. *Woods v. Sledge* clearly stated that the issue of whether the Corporation Commission's "order was a proper adjustment is not an issue in this appeal". Therefore the Supreme Court was not faced with the wellbore pooling issue. The *O'Neill Case* does not address pooling by the wellbore. The quotes from the case are completely out of context. And finally, Appellees argue that this court established wellbore pooling in *Southern Union Production Company v. Eason Oil Co.,* 540 P.2d 603 (Okla.Ct. of App.1975). Southern Union drilled, plugged and abandoned its unit well. The original drilling and spacing unit was abandoned. Eason sought and received an 80 acre drilling and spacing unit. The Court held the original pooling order had terminated. This case did not deal with pooling by the wellbore.

In *Helmerich and Payne, Inc. v. Corporation Commission,* 532 P.2d 419 (Okl. 1975) the Corporation Commission pooled several drilling and spacing units. Our Supreme Court held that the regulatory statute is restrictive in that pooling is by the drilling and spacing unit. They said:

"When the statute says the Commission *shall* require the owners 'to pool and develop their lands *in the spacing unit as a unit'* it is limiting pooling within the designated drilling and spacing unit of 640 acres.... [W]e feel the regulatory statute is restrictive."

This rule applies not only when the Corporation Commission pools more than a single drilling and spacing unit but also when the Corporation Commission tries to limit pooling to a single wellbore.

■ Second, the statute authorizes pooling when the terms and conditions are just and reasonable. An election not to participate transfers by operation of law the right to drill the spacing unit. The measure of compensation for forcibly pooled minerals is their "fair market value". *Miller v. Corporation Commission,* 635 P.2d 1006 (Okl.1981). Requiring an operator to complete in every potentially productive formation in the initial well or lose those

formations not tested is not just or reasonable and often impossible. Dual Completion, is often, as here, a practical impossibility. It is not reasonable to strip a prudent operator of the property rights he has purchased. Pooling by the wellbore is not just and reasonable. Our Supreme Court has said, once the spacing unit is pooled and the time for elections has past, the interest becomes vested and beyond the Corporation Commission's reach to modify. The rights are no longer vulnerable to extinguishment. *Crest Resources v. Corporation Commission,* 617 P.2d 215 (Okl. 1980).

■ Third, the statute requires that owners will receive a just and fair share of the oil and gas. The original election is based upon certain information, or lack of information. Good faith elections were made prior to the first well. It is not fair or just to alter the positions of the interest owners after the initial well is drilled. Once an operator relies on the unit that the Corporation Commission creates, new elections deprive the original risk capital investors of rights earned by taking the risk of the initial well. The order of the commission granting a second election is a deprivation of a property right of the initial risk capital investors. They do not recover their just and fair share of the production.

Appellees for Rehearing contend policy considerations favor pooling by the wellbore. They argue unit wide pooling will "lock up" large areas of land and "stalemate drilling". As was pointed out in *Helmerich and Payne, Inc. v. Corporation Commission,* 532 P.2d 419 (Okl.1975) Appellees' "relief and authority for their theory lies with legislative enactment, not with the Court".

## II

The Order must be reversed on State and Federal Constitutional grounds as it violates Substantive Due Process. The Corporation Commission's authority is derived from the police power of the state. "[T]he police power of the state extends to protecting of the correlative rights of owners in a common source of oil and gas supply and this power may be lawfully exercised by regulating the drilling of wells ... and distributing the production thereof among the owners...." [1] "All property is held subject to the valid exercise of the police power." [2] But, Due Process of Law is a limitation upon the exercise of the police power.[3] "... Substantive Due Process of Law ... is the general requirement that all government actions have a fair and reasonable impact on the life, liberty or property of the person affected." [4] Government actions which attempt to work an arbitrary forfeiture of property rights are unconstitutional as violations of due process.[5]

■ When the Corporation Commission gives an Order such as the one appealed, it acts in its adjudicative capacity rather than its rulemaking capacity. The minimum norms of Federal and State due process must govern review of the Order.[6]

■ Substantive Due Process as applied to the facts of this case requires reversal. Order No. 270540 allowing Appellees the right to participate in the Hunnicutt 2–29 and other subsequent wells does not have a fair and reasonable impact on property as required under Due Process. The property rights of R & R Exploration and Ladd that transferred to Amoco by operation of law under the pooling order were vested. *Crest Resources v. Corporation Commission,* 617 P.2d 215 (Okl.1980). Under the original pooling order, the only requirement to keep the rights of the order alive

1. *Patterson v. Stanolind Oil and Gas Co.,* 182 Okl. 155, 77 P.2d 83 (Okl.1938).

2. *Anderson–Prichard Oil Corporation v. Corporation Commission,* 205 Okl. 672, 241 P.2d 363 (Okl.1951).

3. *In re Lutker,* 274 P.2d 786 (Okl.1954).

4. *City of Edmond v. Wakefield,* 537 P.2d 1211, 1213 (Okl.1975).

5. *Williams v. Bailey,* 268 P.2d 868 (Okl.1954).

6. *Cotton Petroleum Corporation v. Harry R. Carlile Trust,* 57 O.B.J. 998 (Okl. April 26, 1986) 732 P.2d 438 (Okl.1986). *C.F. Braun & Co. v. Corporation Commission,* 609 P.2d 1268 (Okl.1980).

was to commence drilling the initial well within 180 days from the date of that order. The operator met this requirement. Other than this requirement, there is no provision for automatic expiration of the force pooling order. There is no provision for termination or condition for expiration. Order No. 270540 did not have a fair and reasonable impact on property. As we said in Part I of this opinion, Order No. 270540 does not have a reasonable impact upon vested property rights. The Order creates terms and conditions which are not reasonable. The Order deprives the original risk capital investors of their property rights. For these same reasons the Order is a violation of Substantive Due Process.

### III

*Nilsen v. Ports of Call Oil Co.*, 711 P.2d 98 (Okl.1985) states the Corporation Commission has the jurisdiction to determine whether a force pooling order "ceased by its own terms to be of force and effect". The Supreme Court held that the Corporation Commission is the proper forum to decide whether the operations were within the scope of the pooling order. In that case the Supreme Court issued a writ of mandamus to the "Oklahoma Corporation Commission directing it to proceed in the adjudication of whether Ports of Call's operations in the development of Section 14 were within the scope of Order No. 165975".

However, this is not the situation here. In the present case, the Commission stated in its Order:

"The record further reflects that under the provisions of the Order, 180 days was granted to commence drilling operations, and the record further reflects that the Hunnicutt # 1–29 was spudded on October 6, 1981, by Amoco and drilled with due diligence to the total depth, bottoming in the Springer, a separate common source of supply, and completed August 12, 1982".

The Commission has already found that the pooling order did not cease by its own

terms to be of force and effect. Amoco timely drilled and did all that was necessary to have its interest become vested in the formations pooled. The *Nilsen Case* does not give the Corporation Commission the authority to determine title in vested property interests.[7] The Commission exceeded its jurisdiction when it found "that the period of 14 months, during which Amoco had absolute control over the Hunnicutt # 1–29 well was more than sufficient in which to attempt a completion or evaluation by testing any of the formations above the Springer and having failed to do so, exceeded a 'reasonable period of time'." The Corporation Commission was not determining if the order had been complied with, nor was the Commission merely interpreting its prior Order.

### IV

The rule announced in this case as to the scope of the authorization granted the Corporation Commission under 52 O.S.1981 § 87.1 in forced pooling proceedings is a decision rendered on an issue of first impression. This ruling to the effect that section 87.1 may be read only to authorize the forced pooling of working interests on a unit wide basis rather than on an individual well bore basis, because the ruling has not been clearly foreshadowed and because of the inequity of applying the rule to orders which have now become final and on which the parties involved have expended funds in reliance on the validity of the orders, shall be given effect in this case, and prospectively, in all matters where the order of the Corporation Commission in question has not become final as of the date of mandate in this case. See *Harry R. Carlile Trust v. Cotton Petroleum Corp.*, 732 P.2d 438 (Okla.1986); *Griggs v. State ex rel. Department of Transportation*, 702 P.2d 1017 (Okla.1985).

Order No. 270540 REVERSED.

GRAY, P.J., and ROBINSON, J., concur.

7. *McDaniel v. Moyer*, 662 P.2d 309 (Okl.1983).

SUPREME COURT ORDER ON CERTIO-
RARI DECEMBER 16, 1987

DOOLIN, C.J., HARGRAVE, V.C.J.,
and HODGES, LAVENDER, OPALA
and ALMA WILSON, JJ., concur.

SIMMS, J., concurs in part, dissents
in part: "I concur only in recalling
the mandate."

SUMMERS, J., concurs in part,
dissents in part.