2006 OK CIV APP 142

**CHAPARRAL ENERGY, L.L.C. and Noram Energy, L.L.C., Applicants/Appellants,**

v.

**C.E. HARMON OIL, INC.; Charles E. Harmon; John Edward Morgan; Sharon Ann Harmon; et al., and The Oklahoma Corporation Commission, Respondents/Appellees.**

**No. 102,910.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 4, 2006.

Certiorari Denied Oct. 30, 2006.

Gregory L. Mahaffey, Lee D. Groeneveld, Mahaffey & Gore, P.C., Oklahoma City, OK, for Applicants/Appellants.

Frank D. Spiegelberg, John L. Randolph, Pray, Walker, Jackman, Wiliamson & Marlar, Tulsa, OK, for Respondents/Appellees, C.E. Harmon Oil, Inc. and Charles E. Harmon.

Opinion by CAROL M. HANSEN, Judge.

¶ 1 Applicant/Appellants, Chaparral Energy, L.L.C., and NorAm Energy, L.L.C. (collectively Chaparral), seek review of the Corporation Commission's order denying in part Chaparral's application to modify and construe the order of unitization for the N.W. Velma Hoxbar Unit (Unit) in Stephens County, Oklahoma. We affirm the Commission's order because it is supported by competent evidence.

¶ 2 The Commission issued an order in 1966 creating the Unit and setting forth operating terms in the Plan of Unitization (Plan). Respondent/Appellee, C.E. Harmon Oil (Harmon Oil), became operator of the Unit in 1995. Its principal, Respondent/Appellee Charles E. Harmon, acquired a 10% working interest and assigned a 1% working interest to Harmon Oil. Chaparral acquired 86% of the working interest in 2003 and sought to remove Harmon Oil as operator. When Harmon Oil refused to relinquish operations, Chaparral brought the present action before the Commission. It alleged its acquisition of 86% of the working interest was a change of condition requiring modification of

the Plan. It later amended its application to request construction of the Plan provisions regarding election of operator, seeking a finding Chaparral was properly elected operator. Harmon Oil opposed the application.

¶ 3 After a hearing and internal appeals, the Commission entered an order granting only agreed amendments to the Plan, and otherwise denying relief. It found Chaparral failed to prove there had been a substantial change of condition, and change in ownership was not a change of condition sufficient to support modifying its previous order. The Commission found Harmon Oil was and would continue to be the Unit Operator. Chaparral appeals.

¶ 4 In reviewing an order of the Corporation Commission, we will affirm the order if it is supported by substantial evidence. We will not weigh the evidence, but will consider only the evidence tending to support the order to determine whether it "furnishes a substantial basis of facts from which the issue tendered could be reasonably resolved." *Landowners, Oil, Gas and Royalty Owners v. Corporation Commission,* 1966 OK 111, 415 P.2d 942, 943.

I

¶ 5 Two of Chaparral's propositions of error challenge the Commission's finding Harmon Oil was and continued to be the Unit Operator. Pursuant to 52 O.S.2001 § 287.4(a), "The designation of the unit operator shall be by vote of the lessees in the unit in a manner provided in the plan of unitization and not by the Commission." In this case, the Plan provides for Unit Operations to be supervised by an Operating Committee, which consists of one representative designated by each lessee. The representative's vote is weighted according to its lessee's percentage participation in the Unit. The Operating Committee acts at meetings called by the Unit Operator on its own motion or at the request of lessees having at least 10% interest. There must be fourteen days advance written notice of the meeting, with agenda attached. Non-attending lessees may vote by notifying the Unit Operator. The Unit Operator may obtain the approval of the Operating Committee of any action necessary to Unit operations without a meeting by polling the members "by U.S. mail or

telegraph." The Operating Committee may remove the Unit Operator "by the affirmative vote of at least ninety percent (90%) of the voting interest remaining after excluding the voting interest of Unit Operator."

¶ 6 Chaparral submitted into evidence a letter its land manager sent to Harmon, stating, "NorAm Petroleum, L.L.C. and Chaparral Energy, L.L.C. have voted to remove C.E. Harmon Oil, Inc. as the unit operator . . . [and] have selected Chaparral Energy, L.L.C. as successor unit operator." Chaparral asserts Harmon Oil was the alter ego of Charles Harmon, and therefore Charles Harmon was ineligible to vote under the Plan provision excluding the voting interest of the Unit Operator. If Harmon's interest was excluded, the interest of NorAm and Chaparral exceeded 90% of the remaining voting interest and would be sufficient to remove the Unit Operator. If Harmon was allowed to vote, his interest was sufficient to block removal of the Unit Operator. Chaparral contends the Commission erred in refusing to determine the alter ego issue and in failing to find a valid election had been conducted.

¶ 7 The Commission has the authority to decide the alter ego issue in the context of determining who is eligible to vote pursuant to its unitization order. *Pennmark Resources Co. v. Oklahoma Corp. Comm'n,* 2000 OK CIV APP 63, 6 P.3d 1076, 1079. However, in this case, the Commission did not need to reach the alter ego issue because Chaparral failed to put on evidence it had complied with the procedure set forth in the Plan for removal of the Unit Operator. The Commission's order finding Harmon Oil remained the operator is founded upon "a substantial basis of facts from which the issue tendered could be reasonably resolved." We will not disturb its finding.

II

¶ 8 Chaparral's remaining contentions of error challenge the Commission's finding Chaparral failed to prove a change in conditions. Because collateral attack of Commission orders is prohibited by 52 O.S.2001 § 111,

The Corporation Commission is without authority to entertain an application to

amend or modify a prior spacing order establishing a common source of supply which has become final, in the absence of a substantial change of conditions or substantial change in knowledge of conditions existing in the area since the prior order was entered. The phrase 'change in knowledge or conditions' encompasses an acquisition of additional or new data or the discovery of new scientific or technical knowledge which requires a re-evaluation of the geological opinion concerning the reservoir.

*Phillips Petroleum Co. v. Corp. Comm'n,* 1971 OK 13, 482 P.2d 607, 608. In addition to changes in geologic or scientific knowledge, a change in economic conditions may be sufficient change in condition to support modification if it materially alters the feasibility of recovering minerals and could result in waste. *Kuykendall v. Corp. Comm'n,* 1981 OK 105, 634 P.2d 711, 717.

¶9 Chaparral's brief in chief largely argues the desirability of its proposed modifications to the Plan. However, the Commission has no authority to modify the plan unless change of condition is shown. A change in ownership of the working interest is not a change of condition or knowledge of conditions that affects the feasibility of recovering minerals from the reservoir. Chaparral argues continued operation by Harmon Oil would result in waste because Harmon Oil does not plan to use tertiary recovery methods while Chaparral does plan to use them if it becomes operator. At hearing, the parties submitted conflicting evidence as to the feasibility of tertiary recovery. We will not weigh this evidence but will consider only the evidence tending to support the order. Based on the record before us, the Commission's finding Chaparral failed to prove a change in condition is supported by substantial evidence.

¶10 For the foregoing reasons, the order of the Commission is AFFIRMED.

BELL, P.J., and JOPLIN, J., concur.