2011 OK CIV APP 90

Ann Drummond WOOLLEY; Ann Drummond Woolley, Trustee of the Walter Woolley, Jr. Revocable Trust Dated 6/9/88; and Ann Drummond Woolley, Trustee of the Ann Drummond Woolley Trust u/t/a Dated 11/30/98; Five Woolley, L.L.C.; and 7c Land & Minerals Company, Appellants,

v.

The CORPORATION COMMISSION OF the STATE of Oklahoma, Composed of the Honorable Bob Anthony, Chairman, The Honorable Jeff Cloud, Vice Chairman; and The Honorable Dana L. Murphy, Commissioner; and Pontotoc Production Company, Inc., Appellees.

No. 108,686.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 29, 2011.

Certiorari Denied June 27, 2011.

As Corrected Oct. 25, 2011.

Gregory L. Mahaffey, Raven V. McNeal–Noumane, Mahaffey & Gore, P.C., Oklahoma City, OK, for Appellants.

Michele Craig, Deputy General Counsel, Oklahoma City, OK, for Appellee, Oklahoma Corporation Commission.

Richard K. Books, Eric L. Huddleston, Elias, Books, Brown & Nelson, P.C., Oklahoma City, OK, for Appellee, Pontotoc Production, Company, Inc.

CAROL M. HANSEN, Judge.

¶ 1 Appellants, Ann Drummond Woolley and affiliated entities (collectively Woolley), seek review of an order of the Oklahoma Corporation Commission (Commission) granting the application of Appellee, Pontotoc Production Company, Inc. (Pontotoc), to pool the McAlester and Hunton common sources of supply underlying a drilling and spacing unit (Unit) consisting of the southeast quarter of the northeast quarter of Section 23, Township 2 North, Range 7 East, Pontotoc County, Oklahoma. Woolley challenges the order to the extent the Commission (1) refused to dismiss the application to pool the Hunton common source of supply, (2) allocated costs between the McAlester and Hunton common sources of supply, and (3) refused to allow Woolley to participate in force-pooled acreage obtained in two previous pooling orders where Woolley was not named as a party as a result of a title error. We affirm as to the first two issues, and reverse and remand as to the third issue.

¶ 2 Woolley owns both leasehold and mineral interests in the Unit. In May 2008, Pontotoc completed drilling the Woolley # 1–23 Well (Well) in the west half of the Unit. It drilled to a depth of 4,100 feet to test the Hunton but found it dry; it then completed the Well at 1,631 feet in the McAlester. The Commission entered the first pooling order for the Unit on July 21, 2008, pooling both the McAlester and Hunton common sources of supply. Pontotoc did not name Woolley as a respondent in the first pooling because its title information did not reflect Woolley owned interests in the Unit. The Commission entered the second pooling order in March 2009, adding World Export Services as a respondent after Pontotoc's new title opinion showed it owned 11.39% of the Unit. World Export Services' successor elected to participate in the Unit.

¶ 3 Pontotoc filed the third application for pooling naming Woolley as respondent after receiving a revised title opinion showing Woolley owned an interest Pontotoc previously believed it owned. Woolley protested the application and moved to dismiss the application as to the Hunton. The parties tried the issues before an administrative law judge (ALJ) on October 7, 2009. The ALJ's report recommended (1) granting the application, (2) denying the motion to dismiss the Hunton formation, (3) adopting the cost allocation method proposed by Pontotoc, and (4) granting Woolley's request to share in force-pooled acreage.

¶ 4 Both sides appealed the report of the ALJ. An appellate referee, after hearing oral argument and reviewing the record, recommended the ALJ's report be affirmed but modified to allow Woolley to make a casing point election based upon Pontotoc's lack of objection. In discussing the sharing of force-pooled acreage, the appellate referee reasoned the right to share in force-pooled acreage was an equitable right that flowed from the pooling order, and the late pooling of Woolley's interest was a change in conditions or knowledge of conditions that allowed modification of the pooling order. She concluded Woolley's request upon pooling should be considered the initial request for sharing of force-pooled acreage.

¶ 5 The Commission adopted the recommendations of the appellate referee, except as to the sharing of force-pooled acreage. Its order stated,

[Woolley's] request to share in force pooled acreage covered by prior Orders of this Commission is denied because Protestants were not a party to the original pooling. However, Protestants are allowed to share in any force pooled acreage available from subsequent wells. [Woolley's] Motion to Dismiss the Hunton common source of supply is denied.

Woolley appeals from this order.

¶ 6 The Oklahoma Constitution, Art. IX, § 20, sets forth the standard of review for orders of the Corporation Commission:

[R]eview of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence.

**I**

██ ¶ 7 Woolley's first contention is the Commission erred in refusing to dismiss Pontotoc's application for pooling as to the Hunton common source of supply. She argues the pooling statute, 52 O.S.Supp.2007 § 87.1(e), does not contemplate pooling a known dry hole, and Pontotoc seeks to do so only to saddle Woolley with sharing the costs of drilling a dry hole or to force Woolley out of the Hunton for future wells. She argues Pontotoc abandoned the Hunton formation as a dry hole and therefore all rights under previous pooling orders had terminated.

██ ¶ 8 The pooling statute, § 87.1(e), authorizes pooling by the unit, not by the wellbore. A force-pooling order unitizes the working interest in the entire unit as to the named formations. *Amoco Production Co. v. Corporation Comm'n,* 1986 OK CIV APP 16, 751 P.2d 203, 206. The status of a single well in the unit does not affect the status of the unit; the spacing unit remains pooled until the pooling order ceases by its own terms to be of force and effect or until the last well in the unit is plugged and abandoned. The Commission regularly pursued its authority in hearing and ruling on Pontotoc's application to pool Woolley's interest in the Hunton. Whether Pontotoc had abandoned the Hunton formation was a question of fact on which the Commission's ruling was supported by competent evidence Pontotoc intended to drill another unit well in the Hunton. We find no error in the Commission's refusal to dismiss the application as to the Hunton.

**II**

██ ¶ 9 Woolley's second contention is the Commission's allocation of costs between the McAlester and Hunton common sources of supply was inequitable and unsupported by competent evidence. Woolley contests Pontotoc's accounting witness's use of the "exploratory tail" method of allocating intangible drilling costs, which allocated to the Hunton only those costs associated with drilling from the bottom of the McAlester formation to the Hunton. Woolley argues this method gave the Hunton interests a free ride through the McAlester. Pontotoc's witness testified she used the exploratory tail method because the COPAS AG-1[1] guide recommends it for allocating costs for a multiple completion well or down-hole commingled well, and although neither situation was present here, the method was fair because it approximated "what you would get if you drilled just the McAlester well."

¶ 10 The Commission is authorized to decide disputes relative to the costs of drilling unit wells under pooling orders. 52 O.S.Supp.2007 § 87.1(e). The testimony of Pontotoc's accounting witness is substantial evidence supporting the Commission's allocation of costs in this case. We find no error.

1. *Well Costs—Allocations and Adjustments, Accounting Guideline AG-1,* Council of Petroleum Accountants Societies (April 2003).

## III

■ ¶ 11 Woolley's last contention is the Commission erred as a matter of law in refusing to allow Woolley to participate in force-pooled acreage obtained in two previous pooling orders in which Woolley was not named as a party. She argues the Commission punished Woolley for Pontotoc's title error and allowed Pontotoc to benefit from its own mistake. Approximately thirteen percent of the interests of the Unit were obtained from force-pooled owners who did not participate in the Well; of that, Woolley would have been entitled to approximately thirty-five percent.

■ ¶ 12 The sharing of acreage acquired from those who decline to participate in a well is an equitable right of the participants in the well. *Rex Oil Refining, Inc. v. Shirvan,* 1967 OK 127, 443 P.2d 82, 88. The right flows from the pooling order although it is not expressly established by the pooling order. Rather, it is established by the election to participate in the well. Pontotoc cannot equitably claim the right to Woolley's share of the force-pooled acreage vested in itself under the original pooling order by virtue of its own mistake in believing it owned Woolley's working interest. The Commission erred as a matter of law in refusing to allow Woolley to share in force-pooled acreage upon her election to participate in the Well.

¶ 13 The Commission's order is REVERSED to the extent it denied Woolley's request to share in force-pooled acreage, and is otherwise AFFIRMED. This matter is REMANDED for further proceedings consistent with this opinion.

BELL, C.J., concurs.

HETHERINGTON, P.J., dissenting in part, concurring in part.

¶ 14 I dissent only as to the majority decision on Proposition II finding Commission's order is supported by competent and substantial evidence. Based upon the record evidence presented and pursuant to *C.F. Braun & Co. v. Corporation Commission,* 1987 OK 52, 739 P.2d 510, I find the allocation of costs not to be supported by substantial evidence.