2015 OK CIV APP 88

B & W OPERATING, L.L.C., and B & W Exploration, Inc., Applicants/Appellants,

v.

The CORPORATION COMMISSION OF the STATE of Oklahoma; and Devon Energy Production Company, L.P. Respondents/Appellees.

No. 112,502.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 2, 2015.

Gregory L. Mahaffey, Mahaffey & Gore, P.C., Oklahoma City, OK, for Appellants.

Kurt M. Rupert, David E. Pepper, Hartzog Conger Cason, & Neville, Oklahoma City, OK, for Devon Energy Production Company, LP.

Michele Craig, Interim General Counsel, Robert J. Campbell, Assistant General Counsel, Oklahoma Corporation Commission, Oklahoma City, OK, for Oklahoma Corporation Commission.

JERRY L. GOODMAN, Vice–Chief Judge.

¶ 1 B & W Operating, L.L.C., and B & W Exploration, Inc. (collectively "B & W"), appeal Order No. 619555 of the Oklahoma Corporation Commission (OCC) approving Devon Energy Production Company, L.P.'s (Devon) application seeking an order pooling a 640–acre spacing unit covering Section 8–19N–3E, Payne County, Oklahoma. Based on our review of the facts and applicable law, we affirm.

## BACKGROUND

¶ 2 Devon filed an application with the OCC on March 7, 2013, seeking to pool, *inter alia*, the Mississippian and Woodford formations underlying Section 8–19N–3E, Payne County, Oklahoma ("Section 8").[1] On March 15, 2013, the OCC issued Order No. 609084, establishing a 640–acre horizontal drilling and spacing unit for the Mississippian and Woodford common sources of supply underlying Section 8. B & W filed a notice of protest.

¶ 3 On June 6, 2013, a hearing was held before an Administrative Law Judge (ALJ) where B & W requested a plan of development that permitted election in subsequent wells, after participation in the initial well, either on a formation-by-formation basis or well-by-well basis, and not by the unit. On July 10, 2013, the ALJ filed her Report, rejecting B & W's request and recommending the Commission grant Devon's application.

As to the issue regarding elections under subsequent operations, it is the recommendation of the ALJ that all elections, whether initial elections or subsequent elections, be on a unit basis. As recommended by [Devon's] landman, any party who elected timely and participated in the initial well will have the opportunity to participate in a subsequently proposed well without the opportunity to elect in and out of specific formation or in and out of different subsequent wells, as [B & W] has requested here. The Supreme Court, in Amoco at 751 P.2d 203 (Okl.App.1986), was clear that pooling Orders issued by the Commission are on a unit basis. [B & W's] request here would turn the Order and development into a well-by-well process. Therefore, it is the recommendation of the ALJ that the subsequent election provisions under the Order be as recommended by Devon's landman.

¶ 4 B & W timely filed an exception to the Report and an oral argument was heard before the Oil and Gas Appellate Referee. On October 11, 2013, the Referee filed her Report, affirming the ALJ's recommendations. B & W moved for oral arguments before the OCC *en banc* to consider exceptions to the Referee's Report, which the OCC ultimately denied. On December 23, 2013, OCC issued Order No. 619555 and force pooled B & W's, among others, oil and gas leasehold interests in the Mississippian and Woodford common sources of supply underlying Section 8. B & W appeals.

## STANDARD OF REVIEW

¶ 5 We will affirm the OCC's order if it is sustained by law and supported by

---

1. Devon originally requested the pooling order include the Sylvan and Viola common sources of supply underlying Section 8. The Sylvan and Viola were subsequently dismissed.

substantial evidence. *Samson Resources Co. v. Corporation Comm'n,* 1987 OK 73, ¶ 11, 742 P.2d 1114, 1116 (construing Okla. Const. Article IX, Section 20); *Chaparral Energy, L.L.C, v. C.E. Harmon Oil. Inc.,* 2006 OK CIV APP 142, ¶ 4, 149 P.3d 1070, 1072. When performing such a review, the Court does not weigh the evidence on appeal, but only determines whether the supporting evidence possesses substance and relevance. *Pennmark Res. Co. v. Corporation Comm'n,* 2000 OK CIV APP 63, ¶ 11, 6 P.3d 1076, 1080 (citing *Currey v. Corporation Comm'n,* 1979 OK 89, 617 P.2d 177).

## ANALYSIS

¶ 6 On appeal, B & W contends OCC Order No. 619555 is not supported by law or substantial evidence. B & W asserts that after electing to participate in an initial horizontal test well, a non-operator working interest owner, such as B & W, should have the right to elect to participate in subsequent horizontal wells within a pooled unit, or elect not to participate in a given well, without forfeiting its unit leasehold interests.

¶ 7 Devon and the OCC disagree, asserting Oklahoma law authorizes the OCC to pool by drilling and spacing unit only, and not by the wellbore or well-by-well. Defendants cite *Amoco v. Corporation Comm'n,* 1986 OK CIV APP 16, 751 P.2d 203, approved for publication by the Oklahoma Supreme Court, for support.

¶ 8 In *Amoco,* R & R Exploration Co., Inc. (R & R) applied to the OCC to force pool a 640–acre drilling and spacing unit. Amoco Production Co. (Amoco) was designated as operator of the unit under Order No. 199609. R & R elected not to participate in the initial well and was compensated. R & R subsequently assigned a portion of its interest to Bartex Exploration, Inc. (Bartex). Bartex then informed Amoco that it wished to participate in a second well being drilled. Amo-

co declined, insisting the pooling order and R & R's previous election eliminated Bartex's participation in subsequent wells in the unit. After the parties requested the OCC interpret Order No. 199609, the OCC held Bartex had the right to participate in subsequent wells in the spacing unit.

¶ 9 Amoco appealed and the Court of Civil Appeals (COCA) reversed, finding the OCC exceeded its jurisdiction. Citing 52 O.S.1981, § 87.1(e), COCA found the statute mandated developing the spacing unit as a unit, specifically rejecting that § 87.1(e) authorized pooling by the wellbore. *Amoco,* at ¶ 12, at 206. Moreover, citing *Helmerich & Payne, Inc. v. Corporation Comm'n,* 1975 OK 23, ¶¶ 7–8, 532 P.2d 419, 422, COCA stated "[w]hen the statute says the Commission shall require the owners 'to pool and develop their lands in the spacing unit as a unit' it is limiting pooling within the designated drilling and spacing unit of 640 acres, . . . . [W]e feel the regulatory statute is restrictive." *Id.* at ¶ 15, at 206.

¶ 10 Although B & W acknowledges that *Amoco* held § 87.1(e) mandated developing the spacing unit as a unit, it asserts *Amoco* is distinguishable and does not prohibit a plan of unit development that includes wellbore elections in subsequent wells for initial participants. B & W contends the ban on pooling by the wellbore in § 87.1(e) is limited to interest owners who do not participate in the initial well in the unit. It asserts *Amoco* did not anticipate the changing times in the contemporary oil and gas business or the nuances of horizontal drilling and spacing units for horizontal wells.[2]

¶ 11 We disagree. The Oklahoma Supreme Court affirmed the holding in *Amoco* in *SKZ, Inc. v. Petty,* 1989 OK 150, 782 P.2d 939. In *SKZ,* the OCC pooled interests in a drilling and spacing unit. Various interest owners sought to participate in

---

2. B & W asserts the *Amoco* decision contemplated circumstances where a single wellbore was drilled to a depth to test all force pooled common sources of supply and such well could arguably be completed in any productive or common source of supply the well encountered. Thus, it is unfair to let nonparticipants in the initial vertical test participate in subsequent wells. B & W contends the drilling of multiple horizontal wells in the same unit is a completely different scenario because multiple horizontal laterals will be needed for effective drainage, each horizontal lateral generally tests only one common source of supply, and the results of one horizontal lateral does not predict the results of any later lateral in the same pooled unit.

subsequent wells after having declined to participate in the initial unit well. The OCC permitted the interest owners to participate, and the operator appealed. The Supreme Court found the main issue to be whether the OCC had statutory authority to force pool by the wellbore instead of by the drilling and spacing unit. The Supreme Court held it did not.

The decision of the Commission allowing appellees to participate in the increased density wells was erroneous. The Court of Appeals recently addressed the same issue in *Amoco Production Co. v. Corporation Commission.* The opinion was later adopted by this Court. Order Nos. 224432 and 231312 pooled the entire unit, not just the wellbore. The decision of the Commission does not follow the pooling statutes our legislature enacted. The appellees in Amoco, as here, argued that 52 O.S.1981 § 87.1 does authorize pooling by the wellbore. To the contrary, **the statute clearly requires pooling the "spacing unit as a unit".** The rule announced in Amoco clearly shows the Commission exceeded its authority by holding Order Nos. 224432 and 231312 pooled only the wellbore and not the entire drilling and spacing unit.

*Id.* at ¶ 8, at 942 (emphasis added). "The purpose of our pooling statutes is to pool the interest owners' rights to the oil and gas in the named common sources of supply underlying the unit. The actual hole or holes in the ground used to extract the oil and gas cannot be given effect as individual units.." *Id.* at ¶ 9, at 942. Accordingly, § 87.1(e) requires pooling the spacing unit by a unit and not by the wellbore regardless of whether an interest owner participates in an initial well.

■ ¶ 12 B & W further contends OCC Order No. 619555 is not just and reasonable and does not allow B & W to receive its just and fair share of oil and gas in Section 8 as required by § 87.1(e).[3] B & W asserts that when the OCC force pools a unit, an interest owner must either: (1) elect to participate in

the drilling of an initial test well on the unit premises, as well as all subsequent wells in the unit; or (2) relinquish his working interest in the unit as to the initial test well and receive market compensation. It contends, however, that in the age of horizontal drilling and completion where multiple subsequent horizontal wells must be drilled, a small independent producer will be faced with the untenable decision of "ante-up" or "get out," risking losing its working interest in the pooled unit. Thus, B & W asserts the OCC must adopt a plan of development with conditions that are just and reasonable and provide owners a just and fair share of the oil and gas. B & W contends a reasonable plan of unit development is wellbore elections, thereby permitting a smaller, independent operator the ability to participate in the first well but the option to opt out of additional wells without giving up its unit interest and ability to subsequently participate in later wells. B & W does acknowledge, however, that Order No. 619555 operates like a usual OCC force pooling order by requiring participation not only in the initial well but also in all subsequent horizontal wells or the owner risks forfeiting its interest, with compensation, in the unit.

¶ 13 Section 87.1(e) requires that "just and reasonable" conditions be established so that an owner can realize its fair share. The phrase "just and reasonable" invokes equitable principles and implies good judgment and fairness, common sense and justice. See *State v. Public Serv. Co. of Oklahoma,* 1980 OK 110, ¶ 16, 614 P.2d 1100, 1103; *Sien v. Sien,* 1994 OK CIV APP 159, ¶ 7 fn. 1, 889 P.2d 1268, 1271 fn. 1.

¶ 14 In response to similar arguments, the Court in *Amoco* stated:

[ ]the statute authorizes pooling when the terms and conditions are just and reasonable. An election not to participate transfers by operation of law the right to drill the spacing unit. The measure of compensation for forcibly pooled minerals is their

---

3. Section 87.1(e) provides, in relevant part:
[ ]All orders requiring such pooling shall be made after notice and hearing, and shall be upon such terms and conditions as are just and reasonable and will afford to the owner

of such tract in the unit the opportunity to recover or receive without unnecessary expense the owner's just and fair share of the oil and gas....

"fair market value". *Miller v. Corporation Commission*, 635 P.2d 1006 (Okl.1981).. [ ]the statute requires that owners will receive a just and fair share of the oil and gas. The original election is based upon certain information, or lack of information. Good faith elections were made prior to the first well. It is not fair or just to alter the positions of the interest owners after the initial well is drilled. Once an operator relies on the unit that the Corporation Commission creates, new elections deprive the original risk capital investors of rights earned by taking the risk of the initial well. The order of the commission granting a second election is a deprivation of a property right of the initial risk capital investors. They do not recover their just and fair share of the production.

*Amoco*, at ¶¶ 16–17, 751 P.2d at 206–07.

 ¶ 15 One result of a pooling order is the unitization of the working interest in the entire tract as to the named formation. *Amoco*, 1986 OK CIV APP 16, at ¶ 12, 751 P.2d at 206. As a result, risk of loss is equalized by forcing all interest owners to choose, in advance, whether to participate. *Ranola Oil Co. v. Corporation Comm'n of Oklahoma*, 1988 OK 28, ¶ 15, 752 P.2d 1116, 1119. An election not to participate transfers to the designated operator, by operation of law, the right to drill. *Grace Pet. Corp. v. Corporation Comm'n of Oklahoma*, 1992 OK CIV APP 143, ¶ 6, 841 P.2d 1172, 1174; *Amoco*, 1986 OK CIV APP 16, at ¶ 16, 751 P.2d at 206. When the compensation fixed by the pooling order is paid to the party electing not to participate, the rights of the parties are vested. *SKZ*, 1989 OK 150, at ¶ 10, 782 P.2d at 943; *Ranola*, 1988 OK 28, at ¶ 15, 752 P.2d at 1119.

¶ 16 B & W's request would turn the development into a wellbore process, contrary to § 87.1(e). As previously discussed, § 87.1(e) requires pooling the spacing unit as a unit and not by the wellbore. Accordingly, the Court rejects B & W's assertion that a just and reasonable plan of unit development is wellbore elections. Finally, as pointed out in *Helmerich*, B & W's "relief and authority for their theory lies with legislative enactment, not with the Court." *Amoco*, 1986 OK CIV

APP 16, at ¶ 18, 751 P.2d at 206 (citing *Helmerich*, 1975 OK 23, at ¶ 13, 532 P.2d at 423).

### CONCLUSION

¶ 17 Order No. 619555 of the OCC approving Devon's application seeking an order pooling a 640–acre spacing unit covering Section 8–19N–3E, Payne County, Oklahoma, is therefore affirmed.

¶ 18 **AFFIRMED.**

FISCHER, P.J., and WISEMAN, J., concur.